# KANTOR & KANTOR, LLP
## ATTORNEYS AT LAW

19839 NORDHOFF STREET
NORTHRIDGE, CA 91324
TEL: (818) 886-2525
FAX: (818) 350-6272
lkantor@kantorlaw.net

*[Handwritten endorsement: "SO ORDERED. The deposition is stayed pending resolution of this dispute. [signature] 4/15/11"]*

APR 14 2011

April 14, 2011

**Via Facsimile (212) 805-7928**
Honorable Michael H. Dolinger
United States District Court For The
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

  Re: Dominique Demonchaux v. United Healthcare Oxford and Oxford Health Plans (NY)
    Civ. Act. No.:10-CV-4491 (DAB)

Dear Judge Dolinger:

  This firm represents Plaintiff, Dominique Demonchaux, in her action to recover payments for benefits for inpatient residential care received for the treatment of anorexia, bulimia, depression, and other related illnesses. We are in receipt of Defendant, Oxford Health Plan's ( "A United Healthcare Company" and hereinafter, "Oxford") April 13, 2011 correspondence to this Court requesting leave to move to quash Plaintiff's subpoena and Production of Documents to United Healthcare's contracted doctor, Robert Neil Polsky, M.D[1]. For the reasons set forth below, Defendant has not met its burden to show that good cause exists to move to quash this properly noticed reviewing doctor's deposition and production of relevant documents.

### 1. Background Facts Related to the Subpoena of Dr. Polsky

  On February 4, 2011, Plaintiff noticed the deposition of Dr. Polsky to take place on March 17, 2011 in New York. Defendant objected to this deposition in a telephone conversation of March 10, 2011 and by way of letter on March 11, 2011 and refused to produce this witness indicating he was not an officer, director, employee or managing agent of Oxford and also on the grounds that the deposition exceeded the scope of permissible discovery. Plaintiff withdrew the deposition notice with the intention of rescheduling and serving Dr. Polsky as a non-party witness. Accordingly, on April 8, 2011, Plaintiff prepared and renoticed the deposition and production of documents for April 18, 2011.

---

[1] The referral to Dr. Polsky was through his employer, Prest & Associates, Inc., a medical reviewing company who lists United Healthcare as one of its top five clients.

Honorable Michael H. Dolinger
April 14, 2011
Page 2

It should also be noted, on March 10, 2011, Judge Batts extended the discovery cut off to April 18, 2011.

2. **Background Facts Related to Plaintiff's Claim and Why Good Cause Exists for Taking Dr. Polsky's Deposition and Production of Documents**

Ms. Demonchaux is a 53 year old woman with a long history of eating disorder coupled with severe emotional issues. The claim file recently produced by Oxford contains the following history relevant to Ms. Demonchaux's current action and the good cause for taking Dr. Polsky's deposition.

Ms. Demonchaux sought prior treatment for her eating disorder on two occasions and both in residential care. The first was in 1987 for 6 weeks and the second was in 1995 for 6 months. Due to increasing episodes of binging and purging 4 to 5 times daily, episodes of self-harm, suicidal ideations, amenorrhea, acid reflux, pancreatitis, numbness and tingling in her fingers and toes, anxiety and other related symptoms, Ms. Demonchaux sought residential care, and admitted on June 29, 2009 to Monte Nido Vista Treatment Center, and ultimately discharged on September 1, 2009.

On June 29, 2009, Oxford Health Plan authorized treatment with the facility. At admission, Ms. Demonchaux, who is 5' 6", weighed 96 lbs. and had a BMI of 15.9, 76% of Ideal Body Weight. She was terrified of eating food and felt hopeless about her condition. Intensive daily inpatient treatment was commenced and, as of July 7, 2009, Oxford's medical director indicated such treatment was medically necessary.

Residential treatment continued and again, due to Plaintiff's severe condition, Oxford repeatedly approved such treatment, without question, on July 7, 2009, August 3, 2009 and August 7, 2009 deeming on review on each of these days that Plaintiff's treatment was medically necessary.

In fact, notes of August 7, 2009 indicate "mbr continues to meet inpt criteria, tx plan is appropriate for the members presentation..." Just 3 days later on August 10, 2009, Oxford's medical director inexplicably determined, without speaking to any of Plaintiff's doctors, therapists, or anyone treating Plaintiff, and without consideration of any new information, that Ms. Demonchaux's continued residential treatment was not medically necessary and that she was currently "not clearly presenting symptoms that require 24 hour monitoring." What happened?

Review of the claim file indicates that Oxford's denial was actually based on the fact that Plaintiff's treating doctor did not initiate a telephone call to Oxford's medical director during a 2 hour window on August 10, 2009, a call that Plaintiff's doctor reasonably believed would be initiated by Oxford's medical director, as she requested the peer review and had initiated such calls in the past. Indeed, Oxford's claim supervisor documented in his log on August 13, 2009 that he returned a call to Plaintiff's treatment facility regarding the denial. "I conveyed the information that the facility doctor had not called so a denial was issued."

Honorable Michael H. Dolinger
April 14, 2011
Page 3

As a result of this summary denial, on August 14, 2009, Monte Nido Vista Treatment Center, on behalf of Ms. Demonchaux, submitted an expedited appeal to Oxford. Oxford forwarded the expedited appeal on the same date to United Healthcare who contracted with Prest and Associates. Prest in turn hired Dr. Neil Polsky. Dr. Polsky conducted his expedited review and determined that Plaintiff is "essentially medically healthy" and can be treated instead in outpatient treatment.

During this period, and as documented in Oxford's claim file, Ms. Demonchaux remained in residential treatment and was eventually discharged on September 1, 2009 wherein Ms. Demonchaux incurred in excess of $29,000 in expenses, albeit "an insubstantial amount to Oxford's bottom line"[2] but quite substantial to Ms. Demonchaux.

3. **Dr. Polsky's Deposition and Production of Documents Seeks Relevant Information**

As previously discussed, Dr. Polsky was the reviewing doctor, hired by United on Plaintiff's expedited appeal, to review her records and render an opinion as to whether her continued inpatient residential treatment was medically necessary. Oxford's claim file and particularly the denial letter sent to Plaintiff denying her expedited appeal, rely wholly on Dr. Polsky's opinion as such opinion is quoted, *verbatim*, from Dr. Polsky's report and forms the basis of the conclusion of the medical director to uphold the denial:

> "Our Medical Director has decided to uphold the initial adverse determination because the member is not manic or psychotic and she has a long standing history of engaging in self injurious behavior. She is biomedically stable and is at 86% of her ideal weight. The member can be safely treated in an intensive outpatient eating disorder program setting."

Accordingly, the basis of Dr. Polsky's opinion, including any potential conflict of interest and his financial relationship with Oxford and United Healthcare is highly relevant and discoverable.

In *Hogan Cross v. Metropolitan Life Ins. Co.*, 568 F. Supp.2nd 410 (S.D.N.Y. 2008) an ERISA case, the court upheld Plaintiff's requests for production of documents seeking information regarding the compensation of "persons involved in evaluating, advising upon, or determining plaintiff's eligibility for continued benefits." In deeming this information discoverable, the court stated,

> "The bases for and amounts of compensation paid to employees and outside consultants involved in plaintiff's benefit termination itself could prove relevant to plaintiff's claim. Certainly, it could lead to other relevant evidence. It could matter a great deal, for example, if an outside reviewer derived all or most of his or her

---

[2] This was stated by defense counsel in his April 13, 2011 correspondence, page 3, paragraph 3.

Honorable Michael H. Dolinger
April 14, 2011
Page 4

income from MetLife, particularly if that reviewer frequently recommended denial or termination of benefits."

See also, *Jacoby v Hartford Life & Acc. Ins. Co.*, 254 F.R.D.477 (S.D.N.Y., 2009) which permitted discovery of the relationship between the carrier and frequently used medical vendors, whom were characterized as "independent third parties." This is precisely the information requested by Plaintiff in request numbers 2 through 4.

Likewise, the *Hogan* court upheld Plaintiff's document requests which sought documents related to denial rates. Plaintiff has requested this type on information in request numbers 6 through 9. In so holding, the *Hogan* court determined,

> " But that is not to say that evidence of rates of claim denials and benefit terminations would not be reasonably calculated to lead to the discovery of admissible evidence. Evidence of high rates of benefit denials or terminations reasonably could lead to further inquiry as to the reasons for those actions, which might prove either benign or malignant."

Additionally, Plaintiff seeks Dr. Polsky's deposition and production of documents as she challenges Defendant's contention that it consulted with an appropriate medical consultant as required by ERISA's Section 2560.503-1(h)(3)(iii). In this deposition, Plaintiff will have the opportunity to verify the reviewer's credentials to determine whether he was qualified, with appropriate training and experience regarding eating disorders, whether his medical reviews revealed a biased towards the Plan/insurer, and whether his history of reviews disproportionately favors denial of benefits. Plaintiff seeks to discover whether Dr. Polsky has an active practice treating patients and if *any* of his patients suffer from an eating disorder, if he has ever treated patients with eating disorders, and if so, what percentage of his medical practice involves the treatment of patients with eating disorders, and the extent of his medical review practice as it pertains to claims for treatment of eating disorders.

These issues directly impact the extent of Defendant's conflict of interest in deciding Plaintiff's claim. For example, if the medical reviewer lacked education and experience regarding eating disorder patients, his review of the claim would be inappropriate because it would not comply with Section 2560.503-1(h)(3)(iii). Or, if the medical reviewer has a bias against residential treatment of eating disorders, that information would affect the weight the Court will apply to Defendant's conflict of interest when it relied upon the medical reviewer's opinions. Moreover, discovery is appropriate because it will address Defendant's acceptance of Dr. Polsky's medical review without conducting due diligence, which violates ERISA regulations and the purpose of the plan.

Honorable Michael H. Dolinger
April 14, 2011
Page 5

### 4. Plaintiff is Willing to Reschedule the Deposition

As indicated above, this court should not grant Oxford leave to move to quash Plaintiff's Notice of Deposition of Dr. Polsky and Production of Documents as such subpoena seeks information which is discoverable and highly relevant. Plaintiff is willing, however, to reschedule this deposition to a mutually convenient time in the next 30 days if this Court is amenable to continuing the discovery cut-off for this limited purpose.

Plaintiff, therefore requests that this Court deny defendant's request for an informal conference to address Plaintiff's proper Notice of Deposition and Production of Documents and extend the discovery cut-off up to May 18, 2011 for the limited purpose of the taking of this deposition.

Respectfully submitted,

*[signature]* for

Lisa S. Kantor

cc:

Scott Riemer (Via Email)

Kevin Jayne, Law Clerk (Via Email)

Michael Bernstein (Via Email)

John Seybert (Via Email)

Edward Roggenkamp, Law Clerk (Via Email)