UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DOMINIQUE DEMONCHAUX.                    Civ. Act. No.: 10 CIV. 4491 (DAB)

                           Plaintiff,     **DECLARATION OF DR. GARY SCHNEIDER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S REQUEST FOR SUMMARY JUDGMENT**

      -against-

UNITED HEALTHCARE OXFORD AND
OXFORD HEALTH PLANS (NY), INC.,

                          Defendants.     DOCUMENT
------------------------------------------------------------X   <u>ELECTRONICALLY FILED</u>

Dr. Gary Schneider, pursuant to 28 U.S. C. Section 1746(2), declares under penalty of perjury the following:

1. I am the Medical Director at Monte Nido Vista Residential Treatment Center. ("MNVRTC") I served as Dominique Demonchaux's attending physician while she was admitted to Residential Treatment at MNVRTC from June 29, 2009 through September 1, 2009. I know the following facts of my own personal knowledge and, if called as a witness, I could and would testify competently to the following.

2. I completed a Bachelor of Arts degree from UCLA in 1971. I completed my medical degree, Doctor of Osteopathy, at the Kirksville College of Osteopathic Medicine in 1976. I completed a postdoctoral internship at Grandview Hospital Medical Center in Dayton, Ohio in

1

1977. I am Board Certified in Family Practice by the American Osteopathic Board of Family Physicians. I have been in private practice in family medicine since 1979.

3. I was an emergency room physician at Mary Rutan Hospital in La Fonteine, OH from 1977-1978. I was Chairman of the Department of Family Practice at the Medical Center of North Hollywood in 1985, 1986, 1992 and 1993. I was Vice Chief of Staff at the Medical Center of North Hollywood in 1987 and 1988. I was Medical Director of the Rader Institute Eating Disorder Center from 1985 to 1995. I have been Medical Director of the Monte Nido Center for Eating Disorders from 1996 to the present. I have been Medical Director of the Eating Disorder Center of California from 2001 to January 2008. I have been Medical Director of MNVRTC from February 2008 to the present.

4. This Declaration is respectfully submitted in support of Dominique Demonchaux's Opposition to Oxford's Motion for Summary Judgment and Plaintiff's Request for Summary Judgment.

5. Dominique Demonchaux was initially admitted to MNVRTC on June 29, 2009, with primary diagnoses of anorexia nervosa, purging type, and major depression.

6. Prior to July 7, 2009, I had not personally conducted any doctor to doctor reviews with any staff at United HealthCare Services, Inc., ("UBH") including Dr. Ahluwalia. Instead, other staff at MNVRTC, responded to UBH's requests for updates on Ms. Demonchaux's medical condition.

7. On July 7, 2009, Dr. Ahluwalia contacted me, via telephone, for a peer review and I provided her with an update of Ms. Demonchaux's medical condition. Dr. Ahluwalia certified Ms. Demonchaux's continued residential treatment to July 12, 2009 and requested a review on July 13, 2009.

2

8. Other reviews took place between staff at MNVRTC and UBH between July 13, 2009 and August 3, 2009. On each of these reviews, UBH acknowledged the medical necessity of Ms. Demonchaux's continued residential treatment and agreed that she continued to meet criteria.

9. On August 3, 2009, Dr. Ahluwalia contacted me, via telephone, for a peer review and I provided her with an update of Ms. Demonchaux's medical condition. Dr. Ahluwalia certified Ms. Demonchaux's continued residential treatment through August 6, 2009 and requested a review on August 7, 2009. During this telephone conversation, Dr. Ahluwalia did not question the medical necessity of Ms. Demonchaux's continued residential treatment. Additionally, during this conversation, there was no discussion about any days being certified for transition.

10. On August 7, 2009, I did not talk with Dr. Ahluwalia. As indicated in the UR Review comments maintained by MNVRTC, UBH's Leslie Murphy, contacted Norah Wynne, MFT at MNVRTC and requested a doctor to doctor review with both Dr. Ahluwalia and me for August 10, 2009 between 1:30 to 3:30 p.m.

11. At no time prior to August 10, 2009, was I advised by any personnel at UBH, that I was expected to initiate the telephone call with Dr. Ahluwalia on August 10, 2009. In fact, I anticipated that Dr. Ahluwalia would be the one to call me as she had initiated all prior telephone calls with me in the past.

12. It was not until August 12, 2009, that I first learned that Dr. Ahluwalia issued a denial of Ms. Demonchaux's continued residential treatment because I did not call her on August 10, 2009 between 1:30 and 3:30 p.m. Based upon all of my prior dealings with UBH and Dr. Ahluwalia, I was astonished that one missed telephone call would lead to the denial of Ms. Demonchaux's continued residential treatment. This is especially true since up to this point, each of the reviews conducted by both myself, staff at MNVRTC and personnel from UBH were, *pro forma* in

3

nature as Ms. Demonchaux was clearly meeting criteria and neither UBH nor Dr. Ahluwalia, ever questioned, commented or stated that they believed Ms. Demonchaux was not meeting criteria or should step down to a lower level of care.

13. In fact, just 3 days prior, on August 7, 2009, UBH indicated that Ms. Demonchaux continued to meet criteria and that her treatment plan was appropriate.

I declare under the penalty of perjury that the foregoing is true and correct.

DATED: October 3, 2011

_____
Dr. Gary Schneider

4