UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DOMINIQUE DEMONCHAUX,

                                                     Plaintiff,                Civ. Act. No.:  10 CIV. 4491 (DAB)

                           -against-                     <u>DOCUMENT</u>
                                                                            <u>ELECTRONICALLY FILED</u>

UNITEDHEALTHCARE OXFORD AND
OXFORD HEALTH PLANS (NY), INC.,

                                                   Defendants.
----------------------------------------------------------------X


## DEFENDANT'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

                                                   SEDGWICK LLP
                                                   *Attorneys for Defendant*
                                                 OXFORD HEALTH PLANS (NY), INC.
                                                 s/h/a Unitedhealthcare Oxford
                                                 125 Broad Street, 39th Floor
                                                 New York, New York 10004-2400
                                                 Telephone: (212) 422-0202
                                                 Facsimile: (212) 422-0925
                                                 (Sedgwick File No. 03246-000087)

Michael H. Bernstein
John T. Seybert
Betsy D. Baydala
    *Of Counsel*

NY/753012v1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

    POINT I:

    DEMONCHAUX'S ARGUMENTS FOR *DE NOVO* REVIEW ARE
    WITHOUT MERIT ............................................................................................................. 1

    POINT II:

    OXFORD'S DENIAL OF BENEFITS FOR FURTHER INPATIENT
    TREATMENT WAS NOT ARBITRARY AND CAPRICIOUS ........................................ 4

        A.    This Court Should Not Consider Demonchaux's Extra-Record
             Submissions ............................................................................................................ 5

        B.    Demonchaux's Argument That She Met The Requirements For
             "Residential Treatment" Rather Than Inpatient Treatment Is
             Irrelevant ................................................................................................................ 6

        C.    APA Guidelines are Outside the Administrative Record and Not
             Relevant to Oxford's Determination of "Medical Necessity"
             Under the Plan ........................................................................................................ 7

    POINT III:

    THE CONFLICT OF INTEREST FACTOR SHOULD NOT CARRY
    MUCH, IF ANY, WEIGHT IN THIS COURT'S ANALYSIS ......................................... 8

    POINT IV

    THIS COURT SHOULD GRANT SUMMARY JUDGMENT AND
    DISMISS DEMONCHAUX'S COMPLAINT ................................................................ 10

CONCLUSION ............................................................................................................................ 10

CERTIFICATE OF SERVICE ........................................................................................... Attached

## **TABLE OF AUTHORITIES**

Page(s)

### Cases

*Abatie* v. *Alta Health & Life Ins. Co.*,
  458 F.3d 955 (9th Cir. 2006) ...................................................................................................8

*Bergquist* v. *Aetna U.S. Healthcare*,
  289 F.Supp.2d 400 (S.D.N.Y. 2003) .......................................................................................6

*Conkright* v. *Frommert*,
  130 S.Ct. 1640 (2010) .......................................................................................................... 1, 2

*Durakovic* v. *Building Service 32 BJ Pension Fund*,
  609 F.3d 133 (2d Cir. 2010) ....................................................................................................8

*Fay* v. *Oxford Health Plan*,
  287 F.3d 96 (2d Cir. 2002) .................................................................................................. 3, 4

*Firestone Tire and Rubber Co.* v. *Bruch*,
  489 U.S. 101 (1989) .................................................................................................................1

*Gritzer* v. *CBS, Inc.*,
  275 F.3d 291 (3rd Cir. 2002) ...................................................................................................2

*Hobson* v. *Metropolitan Life Ins. Co.*,
  574 F.3d 75 (2d Cir. 2009) ............................................................................................. 1, 4, 8

*Juliano* v. *The Health Maintenance Org. of New Jersey, Inc.*,
  221 F.3d 279 (2d Cir. 2000) ....................................................................................................4

*Kelly* v. *Handy & Harman*,
  406 Fed.Appx. 538 (2d Cir. 2011) ...........................................................................................8

*Kinstler* v. *First Reliance Standard Life Ins. Co.*,
  181 F.3d 243 (2d Cir. 1999) ....................................................................................................4

*McCauley* v. *First Unum Life Ins. Co.*,
  551 F.3d 126 (2d Cir. 2008) ................................................................................................ 1, 9

*Metropolitan Life Ins. Co.* v. *Glenn*,
  554 U.S. 105 (2008) ............................................................................................................ 1, 2

*Miller* v. *United Welfare Fund*,
  72 F.3d 1066 (2d Cir. 1995) ................................................................................................ 4, 5

*Mugan* v. *Hartford Life Group Ins. Co.*,
  765 F.Supp.2d 359 (S.D.N.Y. 2011) .......................................................................................8

*Nichols* v. *Prudential Ins. Co. of America*,
    406 F.3d 98 (2d Cir. 2005) .................................................................................................. 1, 2

*Priestly* v. *Headminder, Inc.*,
    647 F.3d 497 (2d Cir. 2011) ...................................................................................................10

*Reinhart* v. *Broadspire Servs., Inc.*,
    No. 06-cv-752S, 2011 WL 3273152 (W.D.N.Y. July 29, 2011) ............................................10

*Salute* v. *Aetna Life Ins. Co.*,
    No. 04 CV 2035(TCP)(MLO), 2005 WL 1962254 (E.D.N.Y. Aug. 9, 2005) ........................ 6

*Wiener* v. *Health Net of Connecticut, Inc.*,
    No. 07-4651-CV, 2009 WL 427337 (2d Cir. Feb. 23, 2009) ................................................. 8

*Young* v. *Hartford Life and Acc. Ins. Co.*,
    No. 09 Civ. 9811(RJH), 2011 WL 4430859 (S.D.N.Y. Sept. 23, 2011) ................................ 5

## Statutes

FED. R. CIV. P. 37 ................................................................................................................................6

FED. R. CIV. P. 56 ......................................................................................................................... 1, 6

## Regulation

29 C.F.R. §2560.503-1(h) .................................................................................................................. 2

## Miscellaneous

"*Practice Guideline for the Treatment of Eating Disorders*," published by the APA ......................... 7

NY/753012v1

**PRELIMINARY STATEMENT**

Defendant, Oxford Health Plans (NY), Inc. ("Oxford"), s/h/a Unitedhealthcare Oxford, ("Oxford") respectfully submits this reply memorandum of law in further support of its motion pursuant to Rule 56, FED. R. CIV. P., for an order granting summary judgment dismissing Plaintiff Dominique Demonchaux's ("Demonchaux") Complaint.

**POINT I**
**DEMONCHAUX'S ARGUMENTS FOR *DE NOVO* REVIEW ARE WITHOUT MERIT**

In her opposition, Demonchaux admits that the Plan grants Oxford "discretionary authority."[1] (Plt's Opp., p. 16). Therefore, under well-established U.S. Supreme Court and Second Circuit authority, this Court must review Oxford's decision with a strong measure of deference and may only reverse if it finds that decision to have been arbitrary and capricious. *See Firestone Tire and Rubber Co.* v. *Bruch*, 489 U.S. 101, 115 (1989); *Metropolitan Life Ins. Co.* v. *Glenn*, 554 U.S. 105, 110 (2008); *Conkright* v. *Frommert*, 130 S.Ct. 1640, 1646 (2010); *see also*, *McCauley* v. *First Unum Life Ins. Co.*, 551 F.3d 126 (2d Cir. 2008); *Hobson* v. *Metropolitan Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009).

Notwithstanding this unequivocal authority, Demonchaux argues that as in *Nichols* v. *Prudential Ins. Co. of America*, 406 F.3d 98 (2d Cir. 2005), Oxford is not entitled to a deferential review because it never exercised its discretion when it denied Demonchaux's claim. (Plt's Opp., pp. 16-17). This argument is illogical and unsupported by the record because Oxford issued a timely adverse determination letter to Demonchaux on August 14, 2009, which fully explained the basis for Oxford's decision. (301-305).[2] In *Nichols*, the plaintiff's administrative appeal was automatically "deemed denied" because the insurer failed to issue any decision on her appeal. 406 F.3d 98; *see also*,

---

[1] Demonchaux ignores the clear terms of the Plan when she argues that the word "full" "is not found" in the Plan's grant of discretionary authority to Oxford. (*See* Plt's Opp., p. 16 n. 9). The Plan vests Oxford with "full" discretionary authority because it has discretion to interpret plan terms and determine eligibility for benefits. There are no conditions, limitations, exceptions or exclusions applicable to Oxford's discretionary authority. In fact, the Plan explicitly states that "[a]ny interpretation or determination made pursuant to such discretionary authority shall be given <u>full</u> force and effect." (041) (emphasis added).

[2] *See* Exhibits A" through "D" that are attached to the original moving papers for the applicable reference.

1

29 C.F.R. §2560.503-1(h).  The Second Circuit therefore held that the applicable standard of review was *de novo* because the insurer did not exercise its discretion when the plaintiff's claim was "deemed denied" as a matter of law.  *Nichols*, 406 F.3d at 105-06, 109; *see also*, *Gritzer* v. *CBS, Inc.*, 275 F.3d 291, 296 (3rd Cir. 2002) (holding that *de novo* review is appropriate where a trustee failed to act).[3]

Demonchaux's argument that Oxford's initial denial is the procedural equivalent to a claim that has been "deemed denied" because there was no telephone discussion on August 10, 2009 between Dr. Ahluwalia (the Oxford Medical Director) and her treating physician at the Center, Dr. Schneider, is also incorrect.[4]  (Plt's Opp., p. 16).  The administrative record clearly shows that Dr. Ahluwalia performed a concurrent medical necessity review on August 10, 2009.  (197).  Specifically, Dr. Ahluwalia reviewed her prior review, wherein she considered all the information in Demonchaux's file – including Demonchaux's medical status as reported by the Center and Dr. Ahluwalia's two prior discussions with Dr. Schneider.  (184-86).  Demonchaux's argument that there had been "no discussion" of her treatment being transitioned to days is also inaccurate.  (Plt's Opp., p. 7).  During Dr. Ahluwalia's concurrent "medical necessity" review on July 21, 2009, she noted that Demonchaux's condition had improved and that the Center should be notified that her case would be reviewed for "step-down" from inpatient treatment.  (185).  On August 7, 2009, Oxford also requested Demonchaux's "progress towards discharge criteria" and the Center reported that Demonchaux mentioned that she would throw away her food if she was not supervised.  (185-86).  As such, Dr. Ahluwalia exercised her discretion when she determined that as of August 10, 2009, Demonchaux did not require 24-hour structure and monitoring, and instead, could be safely treated

---

[3] Even though Demonchaux also cites to *Abatie* v. *Alta Health & Life Ins. Co.*, 458 F.3d 955, 971-72 (9th Cir. 2006), she has not argued, nor could she prove, that this is one of those "rare class of cases" where the claims administrator flagrantly disregarded ERISA's procedural requirements.  Moreover, this rule, which has not been accepted by the Second Circuit, is contrary to the Supreme Court's rulings in *Glenn*, 554 U.S. at 116 and *Conkright*, 130 S.Ct. at 1645.

[4] The issue of who was supposed to call whom is irrelevant because Dr. Ahluwalia's initial denial was based on her concurrent medical necessity review on August 10, 2009 and Dr. Ahluwalia spoke with Dr. Schneider on August 13, 2009, prior to Demonchaux's expedited appeal.  (179, 187).  Moreover, there is evidence in the administrative record that Dr. Schneider was to initiate the peer review discussions with Dr. Ahluwalia.  (*See* 185 ("md or designee – to call 12 to 4 est") *and* 186 ("requested peer to peer w/ md from facility to call for peer to peer")).

2

in an "intensive outpatient level of care." (197, 292). Demonchaux does not argue that she was unaware of the foregoing, and moreover, her administrative appeal of Dr. Ahluwalia's adverse determination demonstrates not only Oxford's discretionary determination of her claim, but Demonchaux's notice of and objection to it.

With respect to Oxford's discretionary determination on administrative appeal, Demonchaux argues that any discretion exercised by Dr. Polsky and Dr. Wilder is void because their reviews focused on a claim for "inpatient" rather than "residential" treatment. (Plt's Opp., p. 17). First, as discussed in more detail below, the issue on administrative appeal was whether Demonchaux's continued inpatient treatment for anorexia and major depression (both "Biologically Based Mental Illnesses") was "Medically Necessary" under the terms of the Plan. (*See* POINT II (B), *infra*). As such, Dr. Wilder exercised his discretion during his Medical Director Review when he determined that Oxford's denial should be upheld because, based on the records submitted on appeal as well as Dr. Polsky's independent clinical peer review report, Demonchaux was "not manic or psychotic," was "biomedically stable," "at 86% of her ideal weight," and therefore could be "safely treated in an intensive outpatient eating disorder program setting." (179, 301). Second, Demonchaux confuses the role of an independent clinical reviewer with an Oxford Medical Director. Under the clear and unambiguous Plan terms, the ultimate determination of whether treatment is "Medically Necessary" is determined by an Oxford Medical Director, not an outside clinical reviewer such as Dr. Polsky. (086); *see Fay* v. *Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002) (reviewing determinations of medical necessity with deference to the findings of the Medical Director). Here, discretion was exercised by Dr. Wilder, the Oxford Medical Director. (179).

The record thus amply demonstrates that Demonchaux's claim was not "automatically" deemed denied, and that Oxford explicitly exercised its discretion at both the initial claim review and

3

appeal stages.  Accordingly, this Court must determine whether Oxford's denial of further inpatient treatment due to lack of "medical necessity" was arbitrary and capricious.

## POINT II
## OXFORD'S DENIAL OF BENEFITS FOR FURTHER
## INPATIENT TREATMENT WAS NOT ARBITRARY AND CAPRICIOUS

Under the arbitrary and capricious standard of review, Oxford's decision to deny Demonchaux's claim for inpatient treatment as of August 10, 2009 can only be overturned if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *See Fay*, 287 F.3d at 107; *Kinstler* v. *First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999); *Miller* v. *United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (holding that "substantial evidence" "requires more than a scintilla of evidence but less than a preponderance").  Demonchaux concedes in her opposition that it is her burden to establish that Oxford's denial of her claim for lack of medical necessity was arbitrary and capricious.  *See Juliano* v. *The Health Maintenance Org. of New Jersey, Inc.*, 221 F.3d 279, 287-88 (2d Cir. 2000); *Hobson*, 574 F.3d 75.  Demonchaux's opposition fails to make such a showing.

Significantly, Demonchaux does not dispute the following facts, which were considered by Oxford on administrative appeal:

(1) As of August 10, 2009, she had successfully met her first weight gain goal of 10 pounds – she weighed 107.6 pounds and had gained 11.6 pounds since her admission (326, 338);

(2) Upon admission, she was at 79% of her ideal body weight; as of August 10, 2009, her ideal body weight had increased to 86% (314, 338);

(3) On August 12, 2009, she reported to her neuropsychiatrist that purging no longer relieved her anxiety as it once had and that she felt improved calm/mood with Diazepam (320, 321);

(4) In the Center's August 13, 2009 weekly update, it was noted that (a) she was open and communicating with staff and peers; (b) she was tolerating her meal plan with no adversity; (c) she was eating 2,500-2,800 calories per day; (d) she denied any incidents of purging; and; (d) she reported that the interventions performed after her self-harm incident took away a lot of the frantic feelings she had of needing to self-harm (325, 327); and

(5) Demonchaux's August 4, 2009 CT scan of the pelvis, which was indicated due to chronic pancreatitis, revealed a large amount of stool in the colon, but otherwise the pancreas appeared normal and no other abnormalities were identified. (333) (*see also*, Doc. No. 33 at ¶¶ 90, 92, 97, 103-05, 107, 126, 129 and 156).

Accordingly, during Dr. Wilder's Medical Director Review on administrative appeal, he determined, based on all the medical information in Demonchaux's file, including Dr. Polsky's independent clinical peer review report, that further inpatient treatment as of August 10, 2009 was not "Medically Necessary" under the terms of the Plan because Demonchaux was "not manic or psychotic," was "biomedically stable," "at 86% of her ideal weight," and could be "safely treated in an intensive outpatient eating disorder program setting." (179, 301). Therefore, Oxford's adverse determination was well-reasoned, based on substantial evidence in the administrative record and was not arbitrary and capricious. (*Id.*).

A.     This Court Should Not Consider Demonchaux's Extra-Record Submissions

Demonchaux improperly seeks to augment the administrative record with documents that were never presented to Oxford during the initial review or on administrative appeal. These documents include medical records for treatment after August 10, 2009; a Declaration from Gary Schneider, D.O.; inapplicable guidelines from Oxford and the American Psychiatric Association's ("APA") websites and irrelevant statistics obtained from the internet. Since none of this information was submitted to Oxford for its consideration at the time it rendered its final determination on Demonchaux's claim, it cannot be considered by this Court because the Court is without discretion to consider these extra-record submissions in reviewing Oxford's decision-making. *See Miller*, 72 F.3d at 1071; *Young* v. *Hartford Life and Acc. Ins. Co.*, No. 09 Civ. 9811(RJH), 2011 WL 4430859, *13 (S.D.N.Y. Sept. 23, 2011); *Bergquist* v. *Aetna U.S. Healthcare*, 289 F.Supp.2d

400, 411 (S.D.N.Y. 2003); *Salute* v. *Aetna Life Ins. Co.*, No. 04 CV 2035(TCP)(MLO), 2005 WL 1962254, *6 (E.D.N.Y. Aug. 9, 2005).[5]

B.  **Demonchaux's Argument That She Met The Requirements For "Residential Treatment" Rather Than Inpatient Treatment Is Irrelevant**

In her opposition, Demonchaux argues that she is entitled to benefits for the three weeks of "residential treatment" she received from August 10, 2009 through September 1, 2009 because she was "not getting or requesting psychiatric inpatient treatment" when she continued to be treated for anorexia and major depression. (Plt's Opp., p. 2). This argument, however, ignores the Plan terms, the type of treatment she received, and her diagnoses.

The Plan does not provide separate benefits for "residential treatment." Under the clear and unambiguous Plan terms, treatment for "anorexia" and "major depression" is covered under the section of the Plan for "Biologically Based Mental Illnesses." (097). Under the Plan, only treatment of these illnesses on an "inpatient, partial hospitalization or outpatient basis" is covered if the treatment is determined to be "Medically Necessary" under the terms of the Plan. (097). Although Demonchaux's counsel and the Center may prefer to characterize Demonchaux's treatment as "residential" rather than "inpatient," the treatment she received when she was continuously confined to the Center from June 29, 2009 through September 1, 2009 was considered "inpatient treatment" under the terms of the Plan. Demonchaux does not dispute that she paid a $500 co-payment for the treatment she received at the Center. (*See* 206 *and* Doc. No. 33 at ¶19). As set forth in the Plan, "Biologically Based Mental Health Services" requires a co-payment of "Inpatient- $500 per continuous confinement." (008).

Demonchaux's incorrect argument that she was entitled to benefits for "residential treatment" – not "inpatient treatment" – is fatal to her action because she is seeking benefits for

---

[5] Oxford seeks leave to file a motion to strike these extra-record submissions under Rules 37(c) and 56(e), FED. R. CIV. P. The Court is referred to Oxford's letter dated October 13, 2011 for a further discussion of the basis for its motion to strike.

treatment that is simply not covered under the Plan. As a result, Demonchaux's argument in opposition that her continued treatment was "Medically Necessary" because she satisfied the "UBH Level of Care Guidelines for Residential treatment" is wholly irrelevant. (Plt's Opp., p. 18, n. 13). Instead, the ultimate issue is whether Oxford's denial of benefits on the grounds that further inpatient treatment was not "Medically Necessary" as of August 10, 2009 was arbitrary and capricious. Given Demonchaux's failure to show that Oxford's determination that her continued <u>inpatient</u> treatment was "Medically Necessary" as that term is defined in the Plan was arbitrary and capricious, Oxford's motion for summary judgment should be granted.

C. **APA Guidelines are Outside the Administrative Record and Not Relevant to Oxford's Determination of "Medical Necessity" Under the Plan**

Demonchaux inexplicably argues in opposition that her continued treatment at the Center from August 10, 2009 through September 1, 2009 was "Medically Necessary" based on a "*Practice Guideline for the Treatment of Eating Disorders*" that was published by the APA. (Plt's Opp., pp. 17-18). This guideline is inapplicable because it is not part of, or even referenced in, the Plan. The Plan explicitly defines "Medically Necessary" treatment, in part, as "[t]he most appropriate supply or level of service which can safely be provided." (086). The Plan also states that inpatient treatment is "Medically Necessary" if an Oxford Medical Director determines that the claimant's condition "cannot safely be diagnosed or treated on an outpatient basis." (086). The Plan makes no reference to the APA guideline cited by Demonchaux and Oxford did not reference the APA guideline when it denied her claim. In addition, neither Demonchaux nor the Center cited the APA guideline while her claim was being reviewed by Oxford and, thus, Demonchaux cannot cite to this extra-record guideline now. (318-19, 348-49). Accordingly, the APA guideline and Demonchaux's argument that her treatment was covered under the Plan based on this guideline are irrelevant and should be disregarded by this Court.

7

In *Wiener* v. *Health Net of Connecticut, Inc.*, No. 07-4651-CV, 2009 WL 427337, *2-3 (2d Cir. Feb. 23, 2009), the Second Circuit held that the district court abused its discretion when it considered and relied on guidelines from the Food and Drug Administration ("FDA") to determine whether an insurer's decision to deny benefits under an ERISA-governed plan due to lack of medical necessity was arbitrary and capricious.  The Second Circuit held that the district court was not entitled to consider the FDA guidelines because "there was no evidence in the administrative record as to what the FDA standard [was], and no determination by [the insurer] that a failure to meet that standard would establish that [the treatment] was not medically necessary."  *Id.* at *3.  Accordingly, Demonchaux's argument that the Court should apply guidelines from a different body that was not vested with discretionary authority to interpret the Plan's terms is baseless.

### POINT III
### THE CONFLICT OF INTEREST FACTOR SHOULD NOT CARRY MUCH, IF ANY, WEIGHT IN THIS COURT'S ANALYSIS

Demonchaux's opposition also attempts to highlight purported "procedural irregularities" in Oxford's claim review process and asks this Court to review Oxford's adverse determination with "heightened skepticism."  (Plt's Opp., p. 19).  Demonchaux's argument is facially improper as she seeks to import the Ninth Circuit's methodology for conflict of interest analysis into this Second Circuit case.  *See Abatie*, 458 F.3d at 986-69.  Pursuant to well-established and controlling decisions from the Second Circuit, however, "*no weight* is given to a conflict," unless Demonchaux can establish that the "conflict actually affected [Oxford's] decision."  *See Durakovic* v. *Building Service 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010) (citing *Hobson*, 574 F.3d at 83); *Kelly* v. *Handy & Harman*, 406 Fed.Appx. 538, 539 (2d Cir. 2011); *Mugan* v. *Hartford Life Group Ins. Co.*, 765 F.Supp.2d 359, 372 (S.D.N.Y. 2011).

In order to support her misguided "skepticism" arguments, Demonchaux inaccurately argues that Oxford was financially motivated to terminate her benefits and "limit its continued financial

8

obligation" because it "fully expected, when the denial was issued, … that [it] would never have to pay *any* amount past August 10, 2009." (*Id.* at pp. 19-20) (emphasis in original).  But Demonchaux completely disregards the crucial fact that when Oxford denied her claim, both initially and on appeal, it explicitly advised her that she could be safely treated on an "intensive outpatient" basis. (292, 301).  Since the Plan covers "Medically Necessary" treatment of "Biologically Based Mental Illnesses" on an "outpatient" basis, it is clear that Oxford expected its financial obligation to continue, albeit for outpatient, not inpatient care. (*See* 097 *and* 292, 301).  Accordingly, there is no proof that Oxford was financially motivated to deny Demonchaux's claim.  Indeed, Demonchaux did not offer any proof to show that such out-patient care would even cost less than the inpatient care she claims to be entitled to under the Plan.

Demonchaux also inaccurately argues that Oxford allegedly engaged in "three gross procedural irregularities" in the handling of her claim.  (Plt's Opp., pp. 20-21).  In support, Demonchaux cites *McCauley*, in which the "irregularity" established by the plaintiff was the insurer's "unreasonable and deceptive" practice of not telling the plaintiff that it did not consider the evidence submitted on appeal because it did not include his physician's signature.  551 F.3d 126, 135.  The Second Circuit held that the insurer's failure to tell the plaintiff that his physician's signature was necessary for it to review the evidence submitted on appeal demonstrated that the insurer was influenced by its conflict of interest.  *Id.* at 136.  Contrary to the plaintiff in *McCauley*, Demonchaux has not even suggested that Oxford engaged in any similarly "unreasonable or deceptive" practice when it denied her claim.

Moreover, the alleged "three gross procedural irregularities" identified by Demonchaux are not supported by any evidence in the administrative record.  In order to avoid redundancy, as discussed in detail above: (1) Dr. Ahluwalia did not deny Demonchaux's claim "solely because Dr. Schneider did not call her for the peer review" (*see* POINT I, *supra*); (2) Dr. Polsky, during his

9

independent clinical peer review, appropriately considered whether further inpatient treatment was medically necessary to treat Demonchaux's anorexia and major depression[6] (*see* POINT II(B), *supra*); and (3) Dr. Wilder decided, following his Medical Director Review, to uphold Oxford's denial on administrative appeal based on the information received by the Center on appeal and Dr. Polsky's outside clinical peer review report (*see* POINT I, *supra*).  Accordingly, Demonchaux has made no showing that any conflict of interest consideration actually affected Oxford's determination.  This Court should therefore find that this factor does not carry much, if any, weight.

### POINT IV
### THIS COURT SHOULD GRANT SUMMARY JUDGMENT AND DISMISS DEMONCHAUX'S COMPLAINT

For the foregoing reasons and those more fully set forth in Oxford's Memorandum of Law, this Court should find that Oxford's determination was based on substantial evidence in the record and grant summary judgment, dismissing Demonchaux's Complaint. *See Reinhart* v. *Broadspire Servs., Inc.*, No. 06-cv-752S, 2011 WL 3273152, *7 (W.D.N.Y. July 29, 2011). Although Demoncahux cites *Priestly* v. *Headminder, Inc.*, 647 F.3d 497 (2d Cir. 2011) as legal support for the relief she seeks, she offers no explanation as to why the case is even applicable. In *Priestly*, the Second Circuit reversed the district court's order granting summary judgment because it granted the motion before discovery was closed and failed to give notice to the losing party that it was considering entering summary judgment against it. *Priestly* is inapposite because neither of these facts are at issue in this case and therefore, the Court should grant Oxford's motion for summary judgment.

### CONCLUSION

For these reasons, as well as those set forth in Oxford's original moving papers, this Court should grant summary judgment dismissing Demonchaux's Complaint.

---

[6] Demonchaux also insinuates in her opposition that Dr. Polsky never evaluated whether continued treatment was necessary for her "eating disorder." (*See* Plt's Opp., p. 12). As Dr. Polsky explicitly set forth in his peer review report, Demonchaux was being treated for "Anorexia Nervosa," and as of August 10, 2009, was at 86% of her ideal body weight. (313-14). Moreover, following his clinical peer review, Dr. Polsky opined that Demonchaux "could be safely treated in an intensive outpatient <u>eating disorder</u> program setting." (314) (emphasis added).

10

Dated: New York, New York
       October 14, 2011

                              Respectfully submitted,

                              s/_____
                              MICHAEL H. BERNSTEIN (MB-0579)
                              JOHN T. SEYBERT (JS-5014)
                              BETSY D. BAYDALA (BB-5165)
                              SEDGWICK LLP
                              125 Broad Street, 39th Floor
                              New York, New York 10004-2400
                              Telephone: (212) 422-0202
                              Facsimile:  (212) 422-0925
                              (Sedgwick File No. 3246-000087)
                              **Attorneys for Defendant**
                              Oxford Health Plans (NY), Inc.
                              s/h/a Unitedhealthcare Oxford

TO:

Scott M. Riemer
sriemer@riemerlawfirm.com
RIEMER & ASSOCIATES, LLC
60 East 42nd Street, Suite 1750
New York, NY 10165
Telephone: (212) 297-0700
Facsimile:  (212) 297-0730

Lisa S. Kantor, Esq.
lkantor@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile:  (818) 350-6272
**Attorneys for Plaintiff**
*DOMINIQUE DEMONCHAUX*

11

## CERTIFICATE OF SERVICE

I, JOHN T. SEYBERT, hereby certify and affirm that a true and correct copy of the attached **DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was served via **ECF and Regular Mail** on October 14, 2011, upon the following:

Scott M. Riemer
sriemer@riemerlawfirm.com
RIEMER & ASSOCIATES, LLC
60 East 42nd Street, Suite 1750
New York, NY 10165
Telephone: (212) 297-0700
Facsimile:  (212) 297-0730

Lisa S. Kantor, Esq.
lkantor@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile:  (818) 350-6272

**Attorneys for Plaintiff**
*DOMINIQUE DEMONCHAUX*

  s/  
JOHN T. SEYBERT (JS-5014)

Dated:   New York, New York
         October 14, 2011

12

NY/753012v1