| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------X<br>DOMINIQUE DEMONCHAUX.<br><br>                                              Plaintiff,<br><br>           -against-<br><br><br>UNITED HEALTHCARE OXFORD AND<br>OXFORD HEALTH PLANS (NY), INC.,<br><br><br>                                              Defendants.<br>------------------------------------------------------------X | Civ. Act. No.: 10 CIV. 4491 (DAB)<br><br><br><br><br><br><br>DOCUMENT<br><u>ELECTRONICALLY FILED</u> |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO
STRIKE THE IMPROPER EXTRA-RECORD SUBMISSIONS
ATTACHED TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Lisa S. Kantor
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone:   (818) 886-2525
Facsimile:    (818) 350-6272
Attorneys for Plaintiff
Dominique Demonchaux

TABLE OF CONTENTS

PRELIMINARY STATEMENT .......................................................................................................1

POINT 1.  THIS COURT HAS THE DISCRETION TO CONSIDER THE
	SUBJECT EVIDENCE.............................................................................................3

	A.	As the Plan Administrator Operated Under a Conflict of Interest,
		the 2nd Circuit has Determined Good Cause Exists to Admit
		the Subject Evidence Under   Both a *De Novo* and Abuse of
		Discretion Standard of Review	.................................................................3

	B.	The Medical and Treatment Records Attached as Exhibit "G"
		Are Also Admissible As Defendant Had Notice of Them,
		They are Properly Authenticated and Defendant's Claim
		File Includes Entries During this Time Period ............................................5

	C.	The Guidelines for Residential and Acute Inpatient Treatment
		Level of Care Attached as Exhibits "J" and "K" are also
		Admissible As Defendant's Reviewing Doctors Wrongfully
		Relied on the Guideline for Acute Inpatient Treatment and
		Plaintiff was in Residential Treatment..........................................................7

	D.	The Declaration of Dr. Schneider is also Admissible as it
		Attacks the Credibility of Defendant's Reliance on Claim
		Notes Written After August 10, 2009 to Establish What the
		Parties Knew on August 10, 2009 and is Relevant in Weighing
		Defendant's Conflict of Interest...................................................................9

POINT 2.  THE APA GUIDELINES AND OTHER ONLINE CITATIONS ARE
	ADMISSIBLE..........................................................................................................10

CONCLUSION..............................................................................................................................11

# TABLE OF AUTHORITIES

Cases

*Cook v. New York Times Co. Long-Term Disability Plan*,
  02 CIV. 9154 (GEL), 2004 WL 203111 (S.D.N.Y. Jan. 30, 2004) ................................ 4, 5, 6, 9

*Dawes v. First Unum Life Ins. Co.*,
  91 CIV. 0103 (KMW), 1992 WL 350778 (S.D.N.Y. Nov. 13, 1992) ........................................ 9

*DeFelice v. Am. Int'l Life Assur. Co. of New York*,
  112 F.3d 61 (2d Cir. 1997) ....................................................................................................... 4, 5

*King v. Detroit Med. Ctr.*,
  01-72992, 2003 WL 23354130 (E.D. Mich. Sept. 24, 2003) ....................................................... 8

*Marolt v. Alliant Techsystems, Inc.*,
  146 F.3d 617 (8th Cir. 1998) ........................................................................................................ 9

*Nichols v. Prudential Ins. Co. of Am.*,
  406 F.3d 98 (2d Cir. 2005) ........................................................................................................... 4

*Omara v. Local 32B-32J Health Fund*,
  97 CV 7538 (SJ), 1999 WL 184114 (E.D.N.Y. Mar. 30, 1999) ................................................... 9

*Valley Nat. Bank v. Westover*,
  112 F.2d 61 (9th Cir. 1940) .......................................................................................................... 4

*VanderKlok v. Provident Life & Acc. Ins. Co., Inc.*,
  956 F.2d 610 (6th Cir. 1992) ........................................................................................................ 9

*Veilleux v. Atochem N. Am., Inc.*,
  929 F.2d 74 (2d Cir. 1991) ........................................................................................................... 9

Statutes
29 U.S.C. §10229b ........................................................................................................................ 8

Rules
Fed. R. Civ. P. 26 .......................................................................................................................... 2

Regulations
29 C.F.R. § 2560.503-1(f)(2)(g)(1)(i)(ii) .................................................................................. 2, 6

PRELIMINARY STATEMENT

Plaintiff, Dominique Demonchaux, respectfully submits this memorandum of law in opposition to Defendant, Oxford Health Plans (NY), Inc., s/h/a/ Unitedhealthcare Oxford's ("Defendant") motion to strike certain portions of the administrative record included in Ms. Demonchaux's opposition to Defendant's motion for Summary Judgment and in support of Plaintiff's motion for Summary Judgment.

In this action, Ms. Demonchaux seeks to recover benefits for residential treatment level of care for her anorexia nervosa for treatment she received at Monte Nido Vista Residential Treatment Center ("MNVRTC"). To clarify, Ms. Demonchaux did *not* receive inpatient treatment, did *not* request benefits for inpatient treatment from Defendant, and this action has *nothing* to do with inpatient treatment, other than the fact that Defendant incorrectly applied its criteria for inpatient treatment when it wrongfully denied Ms. Demonchaux's continuing benefits for her residential treatment level of care.

The 38 cases cited by Defendant in its motion to strike are smoke and mirrors obscuring the one simple fact: **Defendant applied the wrong criteria in making its benefits determination of Ms. Demonchaux's claim**. Striking the admission of its *own criteria for residential and inpatient treatment* from the record is merely an attempt to perpetuate the illusion that Defendant did not make this fatal error. This misapplication of criteria is incredulous. Under the same rationale, if Ms. Demonchaux sought authorization for an angioplasty and Defendant denied such authorization indicating she did not meet its criteria for open heart surgery, although both procedures relate to the heart, such criteria would never be interchangeable. Defendant's

1

strategy, by way of this instant motion, seems to be to sweep the criteria and other appropriate evidence "under the rug" and hope no one notices.[1]

As will be addressed more fully below, the evidence at issue in Defendant's motion to strike is admissible and good cause exists for its submission and consideration for the following reasons:

1. The Defendant was provided with all the included treatment records pursuant to Ms. Demonchaux's initial disclosures served over a year ago pursuant to Fed. R. Civ. P. 26.

2. To exclude such records and evidence would violate ERISA, specifically, 29 C.F.R. § 2560.503-1(f)(2)(g)(1)(i)(ii), as Plaintiff was entitled to know and obtain copies of the criteria used in denying her benefits determination and Defendant's current efforts to exclude this evidence is wrong.

3. Defendant's claim that the UBH level of care guidelines are irrelevant in this action as they "are neither referenced in the Plan nor considered by Oxford"[2] is disingenuous as its reviewing doctor on appeal (Dr. Polsky), specifically references the criteria to be utilized in his determination as the "UBH Guidelines"[3] and United Behavioral Health (UBH) is named on the checks issued by Defendant to Plaintiff.[4]

4. Dr. Schneider's Declaration is admissible as it attacks the credibility of Defendant's reliance on claim file notes created *after* the date the subject telephone call was to take place of August 10, 2010, and is relevant in weighing Defendant's conflict of interest.

---

[1] Upon review of the record that Defendant submitted in support of its motion for Summary Judgment, there is not one copy of its inpatient guidelines which it has relied upon in denying Ms. Demonchaux's claim.
[2] Defendant's Motion to Strike, page 11, paragraph 1.
[3] See, Demonchaux 311, as annexed to Defendant's motion for Summary Judgment.
[4] See, Demonchaux 206, 210, 214, 218 and 230, as annexed to Defendant's motion for Summary Judgment.

5. Defendant has waived its right to object to such evidence on grounds it was not in the administrative record as its claim file includes numerous entries for the same time period at issue in this motion. (post August 14, 2011 and through Ms. Demonchaux's discharge from MNVRTC on September 1, 2009) [5]

6. The exhibits annexed to the Declaration of Lisa S. Kantor at issue in this motion ( "G", "J", "K" and "L") are properly authenticated and Defendant has offered no evidence that they are not other than its desire to keep the records out as they are damaging to Defendant.

Accordingly, it is respectfully requested that this Court deny Defendant's motion to strike, in its entirety.

## ARGUMENT

## POINT 1

### THIS COURT HAS THE DISCRETION TO CONSIDER THE SUBJECT EVIDENCE

By way of this motion, Defendant seeks to exclude all of Plaintiff's treatment records attached **as** Exhibit "G" to Lisa S. Kantor's Declaration, its own Guidelines for both Residential and Acute Inpatient Treatment level of care, the Declaration of Dr. Schneider, the APA Guidelines and some online citations. For the reasons set forth below, Defendant's motion must be denied as each category of evidence is admissible for several reasons.

**A. As the Plan Administrator Operated Under a Conflict of Interest, the 2nd Circuit has Determined Good Cause Exists to Admit the Subject Evidence Under Both a *De Novo* and Abuse of Discretion Standard of Review**

---

[5] See, Demonchaux 167, 168, 169, 170, 171, 179, 181, 189, 226, 239, 240, 248, 249, 251, 252, 253, and 266 as annexed to Defendants motion for Summary Judgment.

As more fully set forth in Ms. Demonchaux's opposition to Defendant's motion for Summary Judgment, although the subject Plan grants Defendant with "discretionary authority,"[6] if the Plan administrator fails to exercise that discretion, the court should review the claim under a *de novo* standard of review. *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 109 (2d Cir. 2005).  In the present case, as Defendant's plan administrator failed to exercise *any* discretion when she summarily denied Ms. Demonchaux's claim without consideration of any medical evidence, she did not exercise any discretion and *de novo* review is appropriate.  It is well settled in this district that upon *de novo* review, "even purely factual interpretation cases may provide a district court with good cause to exercise its discretion to admit evidence not available at the administrative level if the administrator was not disinterested. In this situation, the district court may assume an active role in order to ensure a comprehensive and impartial review of the case." *DeFelice v. American International Life Assurance Company of New York*, 112 F.2d 61, 66 (2nd Cir. 1997).  Otherwise, "Plaintiffs are utterly helpless against the whim of the conflicted body's interpretation of the facts." Id. [7]

Moreover, this Court has the authority to consider evidence outside the administrative record under an arbitrary and capricious standard if the Plan administrator is conflicted. *Cook v. New York Times Co. Long-Term Disability Plan*, 02 CIV. 9154 (GEL), 2004 WL 203111 (S.D.N.Y. Jan. 30, 2004). "District courts have discretion to consider evidence outside the administrative record where good cause is shown, and the existence of a conflict is considered good cause." *Id.* (citing *DeFelice v. Am. Int'l Life Assurance Co. of New York*, 112 F.3d 61, 66-67 (2d Cir. 1997)). "The evidence plaintiff seeks to introduce is relevant to the credibility of the

---

[6] The Plan simply indicates it grants "discretionary authority." There are no modifiers such as "full" or "a full grant."(086)

[7] Defendant concedes in the motion for Summary Judgment that it is conflicted. Plaintiff refers the court to POINT III of her Opposition to Defendant's motion for Summary Judgment for a further discussion of Defendant's conflict of interest.

sole evidence in the record that contravenes the nearly unanimous findings of her treating physicians. In light of the conflicted position of the Plan Administrator, this evidence will therefore be admitted." *Cook*, 2004 WL 203111, at *23.  In both *DeFelice* and *Cook,* the good cause requirement is met when there is a conflicted administrator. *DeFelice*, 112 F.3d, 66; *Cook*, 2004 WL 203111.  Here, Defendant admittedly operated under a conflict of interest as the plan administrator and payor were the same party.  Accordingly, good cause exists to admit Plaintiff's medical and treatments (Exhibit "G"), Defendant's criteria for both Residential and Inpatient Treatment (Exhibits "J" and "K"), Dr. Schneider's Declaration, copies of the APA Guidelines (Exhibit "L"), and the citations to online resources, which Defendant wrongly claims are outside of the administrative record.

**B. The Medical and Treatment Records Attached as Exhibit "G" Are Also Admissible As Defendant Had Notice of Them, They are Properly Authenticated and Defendant's Claim File Includes Entries During this Time Period**

The medical and treatment records attached as Exhibit "G" are the exact records provided with Ms. Demonchaux's initial disclosures served on Defendant October 4, 2010 and are properly authenticated as Exhibit "G" to the Declaration of Lisa S. Kantor, as attached to Ms. Demonchaux's opposition to defendant's motion for Summary Judgment as Demonchaux I.D. 001-0168.  Prior to the instant motion, Defendant never objected to or questioned the authenticity of these records.  In fact, Defendant attached most of the records to Defendant's motion for Summary Judgment.  It appears Defendant's actual quibble has less to do with authentication and more to do with the fact that these 12 days of records[8] document Plaintiff's continued struggles with food and the medical necessity of her remaining in treatment after August 10, 2009.

---

[8] The dates of service cited by Plaintiff in her opposition to Defendant's motion for Summary Judgment are August 20, 2009 through September 1, 2009.

5

Further, Plaintiff should not be penalized for Defendant's failure to obtain these relevant records for itself during the claim process as they are part of the time period of Plaintiff's claim and Defendant's claim file clearly has entries well beyond the August 14, 2009 date (the date the Expedited Appeal was decided) and past the September 1, 2009 time frame as referenced in these records.

Moreover, due to Defendant's failure to meet the notice requirements of ERISA both in its August 10, 2009 denial letter to Plaintiff and its August 14, 2009 denial on Expedited Appeal[9] by providing Plaintiff with a copy of its criteria used in denying her claim and giving her an opportunity to submit additional supporting documentation, it cannot now object to Plaintiff exercising this right.

> Defendant's October 16 denial letter failed to meet a number of ERISA's basic notice requirements. First, to the extent that the denial of plaintiff's first appeal was based on Cook's failure to submit evidence supporting the diagnostic criteria established by the CDC, this finding was unreasonable because defendants failed to provide her with sufficient information about the contents of those criteria. ERISA's implementing regulations require that disability denials that rely on 'an internal rule, guideline, protocol, or other similar criterion' must set forth the specific criterion relied upon… *Cook*, 2004 WL 203111 at *14.

ERISA provides the same requirements for group health plans as with disability policies as cited in *Cook*. (see, 29 C.F.R. § 2560.503-1(f)(2)(g)(1)(i)(ii)).  Additionally, unlike in *Cook*, Plaintiff, through her counsel, even asked for a copy of this criteria in discovery and Defendant failed to produce it. (see, Exhibit "H" and I" of the Declaration of Lisa S. Kantor)[10]

Finally, Defendant's claim that Plaintiff's counsel of record does not have personal knowledge to authenticate her client's medical records is without merit.  Counsel's Declaration is made on personal knowledge and the subject records are identical to those records attached to

---

[9] See, Demonchaux 292-298 and 301-305 as annexed to Defendant's motion for Summary Judgment.
[10] Defendant simply referred Plaintiff to the Oxford website which by the time of the 2011 discovery requests, did not contain the 2009 Level of Care Guidelines. Hence, Plaintiff's counsel was required to locate copies herself.

Defendant's motion with the addition of 12 more days of service. Accordingly, all of the medical and treatment records attached as Exhibit "G" to the Declaration of Lisa S. Kantor are admissible and should be considered by this Court.

**C. The Guidelines for Residential and Acute Inpatient Treatment Level of Care Attached as Exhibits "J" and "K" are also Admissible As Defendant's Reviewing Doctors Wrongfully Relied on the Guideline for Acute Inpatient Treatment and Plaintiff was in Residential Treatment**

Defendant's efforts to exclude the UBH level of care guidelines for both Acute Inpatient and Residential Treatment level of care must fail as they are highly relevant and should have been a part of the original administrative record pursuant to the mandates of ERISA.

As previously indicated, Defendant's own reviewing doctor on appeal from Prest and Associates, Robert Polsky, specifically noted in his report under the section, "Criteria to be utilized?" :

> "UBH Guidelines" (Demonchaux 311)

Moreover, on each of the checks issued to MNVRTC it states,

> Payment has been made in accordance with an agreement with United Healthcare or United Behavioral Health. (Demonchaux 206, 210, 214, 218 and 230)

Based on the foregoing, Defendant's present claim that such guidelines are "neither referenced in the Plan nor considered by Oxford" is wrong. Additionally, Defendant's claim that the criteria cited was for California is also nonsensical. If United Healthcare/UBH had different criteria for different states, then it should have produced the criteria in the first place. As Defendant fails to provide the "New York" criteria, this argument should be disregarded. Assuming, *arguendo,* that the guidelines submitted by Plaintiff are relevant to California, this does not change the fact that Defendant applied the wrong criteria to evaluate Plaintiff's claim and appeal and failed to sufficiently advise Plaintiff of this criteria as required by ERISA

7

regulations.  Defendant has also failed to produce what it claims to be the correct criteria and without some type of actual evidence that such guidelines are wrong, Defendant's attempt to exclude them is nothing more than a shell game.

Under a similar set of facts regarding the residential treatment of a minor for behavioral problems and the insurer's failure (ValueOptions) to utilize the correct criteria, the Court stated,

> ….the Court must conclude that the DMC acted without just cause in failing to establish the requisite criteria (i.e. the 'Admissions Criteria for Residential Treatment') for use in making the requisite determination. There is no doubt that such criteria existed-the document was attached as Exhibit E to the Defendant's Motion for Partial Summary Judgment as to Count I. This document was relied upon by ValueOptions in its initial denial and its subsequent denial of the Level I appeal, and by **Prest & Associates**, the independent evaluation agency that processed Barbara King's appeal at the Level II appeal. However, if the DMC relied upon this document to deny the requested benefits, then it should have incorporated it into the Summary Plan Description or provided notice to the Plan's participants of its intention to rely upon such criteria. DMC did neither. In fact, there is no evidence in the record to suggest that the DMC ever published the specific criteria upon which it relied upon to deny King's request at any stage of the appellate process. Such a gross failure to inform a plan participant of an essential element of a benefit plan description directly contradicts ERISA's statutory requirement that a summary plan description shall include, *inter alia*, 'the plan's requirements respecting eligibility for participation and benefits' and *'circumstances which may result in disqualification, ineligibility, or denial or loss of benefits.'* (italics emphasis in original) (29 U.S.C. §10229b. *King v. Detroit Med. Ctr.*, 01-72992, 2003 WL 23354130 at *5 (E.D. Mich. Sept. 24, 2003) (underline emphasis added)

In the present matter, Defendant never provided a copy of the criteria that either it or Dr. Polsky of Prest & Associates used in denying her claim and appeal. There is also no mention of this criteria in the Summary Plan Description or any of the Plan documents.  As a result, Defendant never gave Plaintiff the requisite notice of its intention to rely upon such criteria and therefore violated the statutory requirements of ERISA.  As a result, Defendant should not be rewarded by being able to exclude admission of such criteria now by way of this motion.

The notice mandates of ERISA were further discussed in *Cook*,

> ERISA's procedural regulations 'go to the core of the purpose of [ERISA's] notice requirements," *Dawes v. First Unum Life Ins. Co.*, 91 CIV. 0103 (KMW), 1992 WL 350778 (S.D.N.Y. Nov. 13, 1992) at *5, and must be enforced such that they retain their effectiveness, see *Richardson v. Central States, Southeast and Southwest Areas Pension*, 645 F.2d660, 665(8th Cir. 1981) ("the statute and the regulations were intended to help claimants process their claims efficiently and fairly; they were not intended to be used by[a plan administrator] as a smoke screen to shield itself from legitimate claims.') *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998) ('We will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation.')The EMC's failure to provide Cook with the required information as to the criteria it relied upon and the rights attendant upon appeal renders its determination so procedurally flawed as to be arbitrary and capricious. See, *Veilleux v. Atochem N. Am., Inc.*, 929 F.2d 74, 76 (2d Cir. 1991); *VanderKlok v. Provident Life & Acc. Ins. Co., Inc.*, 956 F.2d 610, 616 (6th Cir. 1992) *Omara v. Local 32B-32J Health Fund*, 97 CV 7538 (SJ), 1999 WL 184114 (E.D.N.Y. Mar. 30, 1999). In light of the foregoing analysis, defendant's determination must be vacated and its motion for summary judgment denied. *Cook*, 2004 WL 203111 at *22. (emphasis added)

Here, Defendant's failure to provide Plaintiff with its criteria or apply the correct criteria was "so procedurally flawed" that its attempt to exclude admission of this criteria now, when it is seeking summary judgment, is a "smoke screen" and should not be allowed.

**D. The Declaration of Dr. Schneider is also Admissible as it Attacks the Credibility of Defendant's Reliance on Claim Notes Written After August 10, 2009 to Establish What the Parties Knew on August 10, 2009 and is Relevant in Weighing Defendant's Conflict of Interest**

Defendant has tendered the proposition that *prior to* August 10, 2009, Dr. Schneider was specifically told that he was the one that was to initiate a call with Dr. Ahluwalia between 1:30 and 3:30 p.m. on August 10, 2009. In support of this notion, it cites a few passages from its claim file:

9

>8/10/09 4:09 pm SAHLUWAL
>No call frommd—based on last reviiew(sic) days were certed for
>transition…
>
>8/13/09 9:20 am BBisch
>…fca Murphy requested peer to peer reviews w/md from facility to call
>for peer to peer and notified them of noncert due to lack of peer to peer
>on 8/10/09 (Demonchaux 186-187)

As indicated above, there are no notes or inferences prior to 4:09 p.m. on August 10, 2009, to suggest that anyone advised Dr. Schneider or MNVRTC of their obligation to initiate the peer to peer with Dr. Ahluwalia. Plaintiff submitted this Declaration to demonstrate the discrepancy between Defendant's alleged account of the record and chain of events and Dr. Schneider's. This Court has the discretion to rely on Dr. Schneider's Declaration because it attacks the credibility of Defendant's reliance on its claim notes written *after the fact* which is directly relevant to weighing the importance of Defendant's conflict of interest. See, *Cook,* 2004 U.S. Dist. WL 20311 at *61, admitting evidence that is "relevant to the credibility of the sole evidence in the record that contravenes the nearly unanimous findings of her treating physicians." For these reasons and those set forth above, this Court is requested to consider the Declaration of Dr. Schneider.

## POINT II

### THE APA GUIDELINES AND OTHER ONLINE CITATIONS ARE ADMISSIBLE

At the time Ms. Demonchaux submitted her documents on expedited appeal, she did not know that:

1. Dr. Polsky was the reviewing doctor.
2. Dr. Polsky was going to utilize the wrong level of care guidelines in deciding her appeal.

10

    3. Dr. Polsky had no experience in evaluating eating disorder claims.
    4. Defendant would not provide her with a copy of the level of care guidelines used to determine the outcome of her appeal.

As a result, Plaintiff did not have the opportunity to submit the evidence of Dr. Polsky's poor medical reviews, lack of experience and other online citations prior to her appeal and make it a part of the administrative record. Now, that Defendant is seeking to summarily terminate her case, she requests the record include what she would have submitted had Defendant given her notice of the basis of its denial and denied her claim on appropriate criteria which was disclosed to her.

Likewise, Plaintiff's submission of the American Psychiatric Guidelines for Treatment Recommendations for Patients with Eating Disorders ("APA Guidelines") was appropriate given the fact that Defendant failed to provide Plaintiff with copies of *any* guidelines referred or used by it in denying Plaintiff's claim and upholding its decision on appeal. The APA Guidelines are the gold standard to be used in evaluating any eating disorder claim. The fact that Defendant claims it had no notice of these guidelines, as a basis to exclude them, is incorrect. Had Defendant simply provided Plaintiff with a copy of the actual guidelines it used (or should have used), Plaintiff would not have had to include these guidelines in her opposition.

## **CONCLUSION**

Based upon the foregoing, this Court should deny Defendant's Motion to Strike in its entirety and consider this evidence in connection with Defendant's and Plaintiff's pending motions for Summary Judgment.

| | |
|---|---|
| Dated: December 2, 2011 at<br>        Northridge, California | Respectfully Submitted,<br><br>/s/_____<br>LISA S. KANTOR (SBN 110678)<br>KANTOR & KANTOR, LLP<br>19839 Nordhoff Street<br>Northridge, California 91324<br>Telephone: (818) 886-2525<br>Facsimile:   (818) 350-6272<br><br>***Attorney for Plaintiff***<br>Dominique Demonchaux |

| | |
|---|---|
| TO:<br><br>Scott M. Reimer (SR 5005)<br>sriemer@riemerlawfirm.com<br>Reimer & Associates, LLC<br>60 East 42nd Street, Suite 1750<br>New York, NY 10165<br>Telephone: (212) 297-0700<br>Facsimile:  (212) 297-0730<br><br><br>Michael H. Bernstein (MB 0579)<br>John T. Seybert (JS 5014)<br>Betsy D. Baydala (BB 5165)<br>Sedgwick LLP<br>125 Broad Street, 39th Floor<br>New York, NY 10004-2400<br>Telephone: (212) 422-0202<br>Facsimile: (212) 422-0925<br>***Attorneys for Defendant***<br>Oxford Health Plans (NY), Inc.<br>s/h/a Unitedhealthcare Oxford | |