UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DOMINIQUE DEMONCHAUX,

                        Plaintiff,

           -against-

UNITEDHEALTHCARE OXFORD AND
OXFORD HEALTH PLANS (NY), INC.,

                      Defendants.
------------------------------------------------------------------X

Civ. Act. No.:  10 CIV. 4491 (DAB)

DOCUMENT
ELECTRONICALLY FILED

# DEFENDANT'S REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF ITS MOTION TO STRIKE THE
# IMPROPER EXTRA-RECORD SUBMISSIONS ATTACHED TO PLAINTIFF'S
# OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SEDGWICK LLP
*Attorneys for Defendant*
Oxford Health Plans (NY), Inc.
s/h/a Unitedhealthcare Oxford
125 Broad Street, 39th Floor
New York, New York 10004-2400
Telephone: (212) 422-0202
Facsimile:  (212) 422-0925
(Sedgwick File No.: 03246-000087)

Michael H. Bernstein
John T. Seybert
Betsy D. Baydala
    *Of Counsel*

NY/756472v1

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT.................................................................................................................................. 1

    POINT I:

    OXFORD IS ENTITLED TO AN ARBITRARY
    AND CAPRICIOUS REVIEW ........................................................................................ 1

    POINT II:

    DEMONCHAUX'S EXTRA-RECORD SUBMISSIONS
    ARE INADMISSIBLE AS A MATTER OF LAW ........................................................... 2

        A.    Demonchaux is Not Entitled to Re-Open the
            Administrative Record with Additional Purported
            Proof that She Is Entitled to Plan Benefits ......................................................... 3

        B.    No "Good Cause" Exists to Consider Inapplicable
            Non-Party Guidelines ......................................................................................... 4

        C.    No "Good Cause" Exists to Consider Dr. Schneider's
            Declaration ......................................................................................................... 7

        D.    No "Good Cause" Exists to Consider Irrelevant Scores
            from www.vitals.com ......................................................................................... 8

    POINT III:

    KANTOR'S UNAUTHENTICATED EXHIBITS SHOULD BE STRICKEN ........................... 8

    POINT IV:

    EVIDENCE NOT DISCLOSED IN DISCOVERY IS INADMISSIBLE ................................... 9

CONCLUSION............................................................................................................................. 10

CERTIFICATE OF SERVICE .................................................................................................... 11

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Badasa* v. *Mukasey*,
   540 F.3d 909 (8th Cir. 2008) ................................................................................................... 8

*Bergquist v. Aetna U.S. Healthcare*,
   289 F.Supp.2d 400 (S.D.N.Y. 2003) ............................................................................... 3, 6, 7

*Bing Shun Li* v. *Holder*,
   400 Fed. Appx. 854, 858, 2010 WL 4368469 (5th Cir. 2010) ................................................. 8

*C.G. ex rel. B.G. v. New York City Dept. of Edu.*,
   752 F.Supp.2d 355 (S.D.N.Y. 2010) ........................................................................................ 9

*Campbell* v. *Secretary of Health and Human Servs.*,
   69 Fed. Cl. 775 (Fed. Ct. Cl. 2006) .......................................................................................... 8

*Carnrite* v. *Granada Hosp. Group, Inc.*,
   175 F.R.D. 439 (W.D.N.Y. 1997) ............................................................................................ 9

*Cook v. The New York Times Co. Long-Term Disability Plan*,
   No. 02 Civ. 9154 (GEL), 2004 WL 302111 (S.D.N.Y. Jan. 30, 2004) ........................... 1, 2, 3, 7

*Cooper v. Niagara Community Action Program*,
   No. 08-CV-468S, 2010 WL 1407238 (W.D.N.Y. March 31, 2010) ........................................ 9

*DeFelice v. American Int. Life. Assurance Co. of New York*,
   112 F.3d 61 (2d Cir. 1997) ....................................................................................................... 1

*Fry v. Hartford Ins. Co.*,
   No. 09-CV-6669-CJS-MWP, 2011 WL 1672474 (W.D.N.Y. May 3, 2011) .......................... 2

*Hobson v. Metropolitan Life Ins. Co.*,
   574 F.3d 75 (2d Cir. 2009) .................................................................................................. 2, 3

*Laub v. Aetna Life Ins. Co.*,
   549 F.Supp.2d 571 (S.D.N.Y. 2008) ........................................................................................ 8

*Magee v. Metropolitan Life Ins. Co.*,
   No. 07-cv-88169 (WHP), 2009 WL 3682423 (S.D.N.Y. Oct. 15, 2009) ................................ 2

*Martin v. Hartford Life and Acc. Ins. Co.*,
   No. 09-cv-6617 (CJS), 2011 WL 893221 (W.D.N.Y. March 16, 2011) ................................. 9

*Metzger v. Unum Life Ins. Co. of Am.*,
   476 F.3d 1161 (10th Cir. 2007) ................................................................................................ 8

*Miller v. United Welfare Fund*,
    72 F.3d 1066 (2d Cir. 1995) ................................................................................................. 2

*Salute v. Aetna Life Ins. Co.*,
    No. 04CV2035(TCP)(MLO), 2005 WL 1962254 (E.D.N.Y. Aug. 9, 2005) ................................ 2, 3, 7

*Young v. Hartford Life and Accident Ins. Co.*,
    No. 09 Civ. 9811(RJH), 2011 WL 4430859 (S.D.N.Y. Sep. 23, 2011) ................................................. 4

## Statutes

29 U.S.C. §1133(1) ............................................................................................................................. 6

Fed. R. Civ. P. 26(a) ........................................................................................................................... 9

Fed. R. Civ. P. 37(c) ........................................................................................................................... 1

Fed. R. Civ. P. 56(c) ....................................................................................................................... 1, 9

Fed. R. Civ. P. 56(e) ........................................................................................................................... 1

## Rules

Federal Rule of Evidence 802 ............................................................................................................. 8

Federal Rule of Evidence 901(a) ........................................................................................................ 9

**PRELIMINARY STATEMENT**

Defendant, Oxford Health Plans (NY), Inc. ("Oxford"), s/h/a Unitedhealthcare Oxford, respectfully submits this Reply Memorandum of Law in further support of Oxford's motion pursuant to Rules 37(c) and 56(c) and (e), Fed. R. Civ. P., for an Order striking certain improper extra-record submissions in Plaintiff Dominique Demonchaux's ("Demonchaux") opposition to Oxford's pending motion for summary judgment ("S.J. Opposition").

**ARGUMENT**
**POINT I**
**OXFORD IS ENTITLED TO AN ARBITRARY AND CAPRICIOUS REVIEW**

In her Opposition, Demonchaux repeats her inaccurate argument that Oxford "failed to exercise *any* discretion when [it] summarily denied Ms. Demonchaux's claim without consideration of any medical evidence." (*Compare* Doc. No. 40., p. 7 *with* Doc. No. 30, pp. 19-21). Therefore, in the interests of brevity, this Court is respectfully referred to Oxford's Summary Judgment Reply, which demonstrates Oxford's explicit exercise of its discretionary authority when it issued its written determination following a review of all relevant records stating that Demonchaux's inpatient treatment was no longer "Medically Necessary" after six weeks of inpatient treatment because she could be safely treated on an intensive outpatient basis. (Doc. No. 35, Point I, pp. 5-8). That determination is entitled to a deferential, arbitrary and capricious review and Demonchaux's argument for a *de novo* review is, therefore, without merit.

That said, even in *de novo* review situations, the Court's review is still "limited to the record in front of the [ERISA] claims administrator unless the district court finds good cause to consider additional evidence." *DeFelice v. American Int. Life. Assurance Co. of New York*, 112 F.3d 61, 66-67 (2d Cir. 1997); *see also, Cook v. The New York Times Co. Long-Term Disability Plan*, No. 02 Civ. 9154 (GEL), 2004 WL 302111, *18 (S.D.N.Y. Jan. 30, 2004) (requiring a plaintiff to demonstrate that a conflict actually influenced the administrator's decision before enlarging the record in a *de novo* review). As Oxford explained in its Motion for Summary Judgment, Demonchaux did not (and could not)

1

establish that Oxford's inherent conflict of interest actually influenced its claim determination. (Doc. Nos. 29, Point III, *and* 35, Point III). Accordingly, no "good cause" exists for this Court to consider Demonchaux's extra-record evidence even under the inapplicable *de novo* review standard.

## POINT II
## DEMONCHAUX'S EXTRA-RECORD SUBMISSIONS ARE INADMISSIBLE AS A MATTER OF LAW

The Second Circuit has ruled that under the "narrow" arbitrary and capricious review, a district court is "not free to substitute [its] own judgment for that of the insurer as if [it] were considering the issue of eligibility anew." *Hobson v. Metropolitan Life Ins. Co.*, 574 F.3d 75, 83-84 (2d Cir. 2009) (internal brackets and citations omitted). It is thus well-established that "[i]n reviewing decisions of plan fiduciaries under the arbitrary and capricious standard, the Court is limited to evaluating only the evidence that was before the plan administrator at the time of the denial of benefits." *Salute v. Aetna Life Ins. Co.*, No. 04CV2035(TCP)(MLO), 2005 WL 1962254, *6 (E.D.N.Y. Aug. 9, 2005) citing *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995); *see also, Magee v. Metropolitan Life Ins. Co.*, No. 07-cv-88169 (WHP), 2009 WL 3682423, *2 (S.D.N.Y. Oct. 15, 2009); *Fry v. Hartford Ins. Co.*, No. 09-CV-6669-CJS-MWP, 2011 WL 1672474 (W.D.N.Y. May 3, 2011).

Despite this unequivocal and precedential authority, Demonchaux relies on *Cook*, 2004 WL 302111, to argue that she is still entitled to supplement the administrative record. (Doc. No. 40, pp. 7-8). However, Demonchaux's reliance on *Cook* is misplaced and actually highlights the impropriety of her extra-record submissions. In *Cook*, the plaintiff sought an award of disability benefits and submitted evidence outside of the administrative record in support of her motion for summary judgment. 2004 WL 302111. Upon the defendant's objection to this evidence, this Court divided plaintiff's extra-record submissions into two categories: (1) evidence attempting to re-open the administrative record to establish entitlement to ERISA plan benefits (i.e., evidence that the plaintiff was allegedly disabled); and (2) evidence attempting to establish a conflict of interest or procedural irregularity. *Id.*, at *17. The Court held that the first category of evidence cannot be considered

2

under an arbitrary and capricious review because it was not before the plan administrator when it rendered its final determination. *Id.*, at *17, n.14. The Court held that it had discretion to consider relevant evidence in the second category upon a showing of good cause. *Id.*, at *18. Here, although Demonchaux has submitted both categories of evidence, none of it is admissible for the reasons discussed below.

A.  **Demonchaux is Not Entitled to Re-Open the Administrative Record with Additional Purported Proof that She Is Entitled to Plan Benefits**

On August 14, 2009, Oxford issued its final decision on administrative appeal upholding its original decision to deny Demonchaux's claim for continuing inpatient treatment benefits under the Plan. (301-05).[1] Accordingly, any evidence allegedly submitted to Oxford after August 14, 2009 was not considered by Oxford when it rendered its final decision; therefore, any such evidence cannot be considered by this Court under an arbitrary and capricious review. *See Hobson*, 574 F.3d 75, 83-84 (reaffirming that a district court cannot consider "the issue of eligibility anew") (internal citations omitted); *Cook*, 2004 WL 302111, *17; *Salute*, 2005 WL 1962254, *6.

In her S.J. Opposition, Demonchaux improperly attempts to accrete the administrative record with extra-record materials, including (i) additional medical treatment records (Doc. Nos. 32-1 *and* 32-2) (*see* Doc. No. 32, ¶3) (noting they were produced on October 4, 2010, over 13 months after the administrative record closed); and (ii) online internet source references[2] (Doc. No. 30, pp. 5 n.1, 13 n.7 *and* 14), to argue that she is entitled to inpatient treatment benefits under the Plan. Plainly, however, none of this evidence was submitted to Oxford in support of Demonchaux's claim for Plan benefits and was not before Oxford when it rendered its final decision on administrative appeal. This Court cannot consider this evidence as a matter of law. *See Bergquist v. Aetna U.S. Healthcare*, 289 F.Supp.2d 400, 411 (S.D.N.Y. 2003); *Salute*, 2005 WL 1962254, *6-*7.

---

[1] Exhibits "A" through "D" that are attached to Oxford's Motion for Summary Judgment contain the applicable references. (*See* Doc. Nos. 24 thru 26-3).
[2] These references include www.anad.org; www.cdc.gov; and http://labtestsonline.org.

3

Notwithstanding the foregoing, and without any legal support, Demonchaux argues that Oxford was obligated to obtain her extra-record medical treatment notes when it was reviewing her claim. (Doc. No. 40, p. 8). This argument is illogical because Demonchaux admits that the only relevant extra-record treatment notes are dated after Oxford's final determination on August 14, 2009. (Doc. No. 40, p. 8 n.8). Demonchaux also ignores the fact that it was her burden to submit to Oxford any information she believed necessary to support her claim for Plan benefits. (030-035). As this Court recently held, "[t]he Second Circuit has never found that ERISA fiduciaries have a duty to gather information." *Young v. Hartford Life and Accident Ins. Co.*, No. 09 Civ. 9811(RJH), 2011 WL 4430859, *12 (S.D.N.Y. Sep. 23, 2011).

Demonchaux inaccurately argues that this Court should consider her extra-record treatment notes because Oxford allegedly failed to comply with ERISA's notice requirement, stating that she did not have the opportunity to submit additional supporting documents to Oxford.[3] (Doc. No. 40, p. 9). But Oxford explicitly advised in its initial denial letter that Demonchaux had the right to submit "any additional information" that she "would like to submit in support of [her] appeal." (294-95). In response to this letter, Demonchaux's provider submitted the evidence it considered necessary to support Demonchaux's claim on appeal, which totaled over 30 pages. (316-49).

**B.**   <u>**No "Good Cause" Exists to Consider Inapplicable Non-Party Guidelines**</u>

Demonchaux's S.J. Opposition includes guidelines from non-parties, United Behavioral Health ("UBH") and the American Psychiatric Association ("APA"), to argue that her inpatient treatment at issue was "Medically Necessary." (Doc. Nos. 32-5, 32-6 *and* 32-7). As Oxford set forth in its original moving papers, these guidelines are irrelevant to Oxford's determination of whether Demonchaux was entitled to continuing in-patient Plan benefits. (Doc. No. 38, pp. 11-13).

Nonetheless, Demonchaux argues that the UBH guidelines are referenced in the Plan and were considered by Oxford because, first, UBH is named on the checks in the administrative record.

---

[3] Demonchaux also incorrectly argues that Oxford failed to provide sufficient notice of the criteria it used in denying her claim. (*See* Point II(B)(2), *infra*).

4

(Doc. No. 40, pp. 5, 10). However, all of the checks that Demonchaux cites were issued by "OHPI NY INC," which clearly stands for "Oxford Health Plans (NY), Inc" – the named defendant. (206, 210, 214, 218, 230). Second, Demonchaux states that the notation on the remittance advice forms that "[p]ayment has been made in accordance with an agreement with United Healthcare or United Behavioral Health," somehow supports her argument. (*Id.*) (emphasis added). However, the relevant agreement here is with United Healthcare – the other named defendant – and not with non-party UBH. Third, Demonchaux argues that Dr. Robert Polsky, the independent medical peer review consultant retained on administrative appeal, noted that he reviewed "UBH criteria." (314). However, there is no indication whatsoever that Dr. Polsky was referring to the UBH guidelines included in Demonchaux's S.J. Opposition.[4] Moreover, Dr. Polsky opined that Demonchaux "could be safely treated in an intensive outpatient" basis (314), which is the relevant criteria detailed in the Plan for determining whether inpatient treatment is "Medically Necessary." (086). Furthermore, the Plan requires that "Medically Necessary" determinations be made by Oxford's Medical Directors. (*Id.*). Therefore, Oxford's final determination on administrative appeal, which was based on Oxford Medical Director Dr. G. Wilder's certification that Demonchaux's inpatient treatment was not "Medically Necessary" under the terms of the Plan because she could be safely treated on an outpatient basis, does not reference or rely on any UBH guideline. (301).

1.  **Oxford applied the correct criteria in determining whether Demonchaux was entitled to coverage for further inpatient treatment**

Demonchaux incorrectly argues that the Plan does not mention the criteria Oxford used to determine whether her inpatient treatment for anorexia and major depression was "Medically Necessary." (Doc. No. 40, pp. 10-11). Not only is this incorrect, but the exact criteria Oxford used in deciding Demonchaux's claim is explicitly set forth in the Plan. Pursuant to the unambiguous

---

[4] These guidelines are "2009 Level of Care Guidelines: Mental Health" for the "U.S. Behavioral Health Plan, California" entitled "Acute Inpatient" and "Residential Treatment." (Doc. Nos. 32-5 *and* 32-6). The matter *sub judice* is a New York, not California, matter.

5

NY/756472v1

Plan terms, if a participant receives treatment for anorexia or major depression[5] on an inpatient, partial hospitalization, or outpatient treatment basis, coverage for this treatment is provided under the Plan if an Oxford Medical Director certifies that the treatment is "Medically Necessary." (065, 086, 097). "Medically Necessary" inpatient treatment is defined under the Plan as:

> The most appropriate supply or level of service which can safely be provided. For inpatient services, it further means that your condition cannot safely be diagnosed or treated on an outpatient basis. (086).

*See Bergquist*, 289 F.Supp.2d 400, 412 (holding that the insurer's decision was not arbitrary and capricious because it appeared to follow the letter of the policy in denying further ERISA plan benefits).

### 2. Oxford provided sufficient notice of the criteria it used to determine the medical necessity of Demonchaux's inpatient treatment under the Plan

ERISA requires that a plan "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. §1133(1). Demonchaux inaccurately argues that she was not informed of the criteria Oxford used to deny her claim.[6] (Doc. No. 40, pp. 11-12). In its initial denial letter dated August 10, 2009, Oxford notified Demonchaux that her claim for continuing inpatient treatment benefits was denied on the grounds that the treatment was not "Medically Necessary" under the terms of the Plan. (292). Oxford explained the reasons why its Medical Director determined that her treatment was not "Medically Necessary" – namely, because she was not "clearly presenting signs and symptoms that require[d] 24 hour structure and monitoring" and she could be safely treated "in an intensive outpatient level of care." (*Id.*). In its appeal uphold letter dated August 14, 2009, Oxford advised Demonchaux that it was upholding its initial adverse decision on the grounds that her treatment was not "Medically Necessary" under the Plan terms. (301). Again, Oxford explained the reasons why

---

[5] Both conditions are considered "Biologically Based Mental Illnesses" under the terms of the Plan. (Doc. No. 24-1, p. 98). Demonchaux's repeated assertions that her treatment was "residential" are unavailing.
[6] Notably, Demonchaux never raised this argument, which is incorrect, in her S.J. Opposition.

6

inpatient care after August 10, 2009 was not "Medically Necessary" – because she was "not manic or psychotic," had "a long-standing history of engaging in self-injurious behavior," was "biomedically stable," was "at 86% of her ideal weight" and, therefore, could be safely treated in an "intensive outpatient" setting. (*Id.*). As such, Oxford's final decision on administrative appeal was based on the same grounds that were communicated to Demonchaux in its initial denial letter; i.e., that further inpatient care was not a covered benefit because she could be safely treated on an outpatient basis. Accordingly, Demonchaux was afforded sufficient notice of the reasons for the denial of benefits. *See Cook*, 2004 WL 203111, *14 (holding that notice was improper because the determination on appeal was based on grounds not originally communicated to plaintiff).

C.     **No "Good Cause" Exists to Consider Dr. Schneider's Declaration**

Dr. Schneider's Declaration is inadmissible to the extent it seeks to respond to or criticize Oxford's adverse benefit determination. *See Berquist*, 289 F.Supp.2d 400, 411 (holding that it was not appropriate to consider a treating physician's affidavit that "was NOT part of the administrative record, either originally or on remand") (emphasis in original); *Salute*, 2005 WL 1962254, *6-*7 (holding that a physician's "rebuttal" affidavit was not admissible evidence because the administrative record could not be expanded after it was closed). Notably, however, Dr. Schneider's Declaration does not criticize Oxford's clinical determination that Demonchaux could be safely treated on an intensive outpatient basis as of August 10, 2009. Rather, the sole purpose of Dr. Schneider's Declaration is to discuss the scheduling of a telephone conversation between him and Dr. Ahluwalia, Oxford's Medical Director, on August 10, 2009. (Doc. No. 31). In her Opposition, Demonchaux only relies on *Cook*, 2004 WL 203111, to argue that this Court has the discretion to consider Dr. Schneider's Declaration. (Doc. No. 40, p. 13). In *Cook*, however, the evidence the Court considered concerned the reliability of a diagnostic test that was critical to the plaintiff's claim because it was the only test result that disputed her alleged disability status. 2004 WL 203111, *18. Here, the fact that Dr. Schneider did not speak with Dr. Ahluwalia on August 10, 2009 is in no way

7

critical to Demonchaux's claim for Plan benefits, which was not denied initially due to this missed telephone conversation (*see* Doc. No. 35, pp. 6-7), especially given the fact that Dr. Schneider later spoke with Dr. Ahluwalia on August 13, 2009 before Oxford issued its final appeal denial. (187).

**D.**     **No "Good Cause" Exists to Consider Irrelevant Scores from www.vitals.com**

Demonchaux argues that "good cause" exists for this Court to consider hearsay evidence from unknown sources grading Dr. Polsky with an allegedly "poor" score from four unidentified patients on www.vitals.com as purported proof of his alleged inexperience in evaluating eating disorder claims and allegedly poor independent clinical peer review. (Doc. No. 40, pp. 13-14); *see* Rule 802 of the Federal Rules of Evidence. However, Demonchaux is not permitted to rebut Dr. Polsky's independent medical peer review report, which was generated during her administrative appeal. *See Laub v. Aetna Life Ins. Co.*, 549 F.Supp.2d 571, 576 (S.D.N.Y. 2008) citing *Metzger v. Unum Life Ins. Co. of Am.*, 476 F.3d 1161, 1166 (10th Cir. 2007). Moreover, Demonchaux has failed to explain how Dr. Polsky's purportedly "poor" score relating to his "bedside manner" and/or "ease of appointment" is at all relevant to his independent clinical peer review of Demonchaux's claim for inpatient Plan benefits. Furthermore, www.vitals.com is hardly an authoritative source and Demonchaux has failed to establish its trustworthiness. *See Campbell* v. *Secretary of Health and Human Servs.*, 69 Fed. Cl. 775, 781 (Fed. Ct. Cl. 2006) (finding internet citations were not reliable); *see also Bing Shun Li* v. *Holder*, 400 Fed. Appx. 854, 858 n. 4, 2010 WL 4368469, *2 n.4 (5th Cir. 2010) (noting that Wikipedia contains a number of disclaimers regarding its reliability); *Badasa* v. *Mukasey*, 540 F.3d 909, 910-11 (8th Cir. 2008) (questioning the reliability of Wikipedia).

**POINT III**
**KANTOR'S UNAUTHENTICATED EXHIBITS SHOULD BE STRICKEN**

Case law in this Circuit overwhelmingly supports Oxford's motion to strike the extra-record medical treatment notes, UBH guidelines and the APA guideline that are annexed to Demonchaux's attorney, Lisa Kantor's Declaration because she lacks the requisite personal knowledge of the authenticity of these documents. (Doc. No. 38, Point II). Demonchaux's only argument in

Opposition is that these records are authentic because Kantor says they are. (Doc. No. 40, pp. 6, 8). Kantor's conclusory statement that she has personal knowledge of the accuracy of these records is insufficient as a matter of law. *See* Rule 56(c)(4), Fed. R. Civ. P. *and* Rule 901(a) of the Federal Rules of Evidence; *see also*, *Carnrite* v. *Granada Hosp. Group, Inc.*, 175 F.R.D. 439, 449 (W.D.N.Y. 1997) ("An attorney's affidavit not based on personal knowledge is an impermissible substitute for the personal knowledge of a party."); *Martin v. Hartford Life and Acc. Ins. Co.*, No. 09-cv-6617 (CJS), 2011 WL 893221, *8 (W.D.N.Y. March 16, 2011). Moreover, the fact that some of the medical treatment notes are included in the administrative record is irrelevant on this point because the extra-record submission includes 12 extra days of treatment outside the record, which remain unauthenticated. (Doc. No. 40, pp. 9-10). Since Kantor has failed to establish that she has the requisite personal knowledge to authenticate these documents, they are "blatant[] inadmissible hearsay," which cannot be considered by this Court. *C.G. ex rel. B.G. v. New York City Dept. of Edu.*, 752 F.Supp.2d 355, 360-61 (S.D.N.Y. 2010); *see also*, *Cooper v. Niagara Community Action Program*, No. 08-CV-468S, 2010 WL 1407238, *4 (W.D.N.Y. March 31, 2010).

**POINT IV**
**EVIDENCE NOT DISCLOSED IN DISCOVERY IS INADMISSIBLE**

Demonchaux does not dispute that she never identified or disclosed the various online internet sources or the non-party guidelines from UBH and the APA during discovery as required under Rule 26(a), Fed. R. Civ. P. Therefore, for the reasons set forth in Oxford's original moving papers, Demonchaux is precluded from relying on this information now and it is inadmissible as a matter of law. (*See* Doc. No. 38, Point III).

## **CONCLUSION**

For the reasons set forth in Oxford's initial moving papers and for the reasons set forth herein, it is respectfully requested that this Court grant Oxford's motion to strike in its entirety.

Dated: New York, New York
December 19, 2011

Respectfully submitted,

 s/
MICHAEL H. BERNSTEIN (MB 0579)
JOHN T. SEYBERT (JS 5014)
BETSY D. BAYDALA (BB 5165)
SEDGWICK LLP
125 Broad Street, 39th Floor
New York, New York 10004-2400
Telephone: (212) 422-0202
Facsimile:  (212) 422-0925
michael.bernstein@sedgwicklaw.com
*Attorney for Defendant*

To:

Scott M. Riemer , Esq.
sriemer@riemerlawfirm.com
RIEMER & ASSOCIATES, LLC
60 East 42nd Street, Suite 1750
New York, NY 10165
Telephone: (212) 297-0700
Facsimile:  (212) 297-0730

Lisa S. Kantor, Esq.
lkantor@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile:  (818) 350-6272
**Attorneys for Plaintiff**
*DOMINIQUE DEMONCHAUX*

**CERTIFICATE OF SERVICE**

I, BETSY D. BAYDALA, hereby certify and affirm that a true and correct copy of the attached **DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO STRIKE THE IMPROPER EXTRA-RECORD SUBMISSIONS ATTACHED TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was served **via ECF and regular mail** on this 19th day of December, 2011, upon the following:

Scott M. Riemer
sriemer@riemerlawfirm.com
RIEMER & ASSOCIATES, LLC
60 East 42nd Street, Suite 1750
New York, NY 10165
Telephone: (212) 297-0700
Facsimile: (212) 297-0730

Lisa S. Kantor, Esq.
lkantor@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272
***Attorneys for Plaintiff***
*DOMINIQUE DEMONCHAUX*

Dated:   New York, New York
         December 19, 2011

                                           s/_____
                                           BETSY D. BAYDALA (BB 5165)