RIEMER & ASSOCIATES LLC
Attorneys for Plaintiff
60 East 42nd Street, Suite 1750
New York, New York 10165
(212) 297-0700
sriemer@riemerlawfirm.com

KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886-2525
lkantor@kantorlaw.net

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DOMINIQUE DEMONCHAUX,                                                    10 CV 4491 (DAB)

                Plaintiff,

      -against-

UNITEDHEALTHCARE OXFORD and
OXFORD HEALTH PLANS (NY), INC.,

                Defendants.
----------------------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF AN AWARD OF
ATTORNEYS' FEES AND COSTS**

Of Counsel:

Scott M. Riemer
Lisa S. Kantor

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 1

      I.     ATTORNEYS' FEES SHOULD BE AWARDED TO DEMONCHAUX ................. 1

            A.     PLAINTIFF'S MOTION FOR ATTORNEYS' FEES IS NEITHER
                   PREMATURE NOR UNTIMELY ................................................................ 1

            B.     DEMONCHAUX ACHIEVED "SOME SUCCESS ON THE MERITS"
                   BECAUSE THIS COURT REMANDED HER CLAIM TO OXFORD ....... 2

            C.     EVEN IF *ARGUENDO*, THE *CHAMBLESS* FACTORS APPLY, ALL
                   OF THE *CHAMBLESS* FACTORS FAVOR DEMONCHAUX ................... 5

                   1.    Oxford Engaged In Culpable Conduct ............................................. 6

                   2.    Oxford Has The Ability To Satisfy An Award Of Attorneys' Fees ............ 6

                   3.    An Award Of Attorneys' Fees Would Deter Others Persons
                         From Acting Similarly Under Like Circumstances ......................... 7

                   4.    The Merits Favor Demonchaux .......................................................... 7

                   5.    The Action Conferred A Common Benefit ..................................... 7

      II.    THE COURT SHOULD AWARD $96,070.50 IN ATTORNEYS' FEES ................ 8

            A.     THE HOURLY RATES REQUESTED REFLECT THE
                   PREVAILING MARKET RATES ................................................................. 8

            B.     THE NUMBER OF HOURS REQUESTED BY DEMONCHAUX IS
                   REASONABLE ................................................................................................ 9

      III.   THE COURT SHOULD AWARD $1,284.30 IN COSTS ............................................ 10

CONCLUSION ............................................................................................................................. 10

TABLE OF AUTHORITIES

*Bilazzo v. Portfolio Recovery Associates, LLC,* 876 F.Supp.2d 452 (D.N.J. 2012) ............................ 8

*Bowers v. Hartford Life & Accident Ins. Co.*, 2010 U.S. Dist. LEXIS 114663
(S.D. Ohio Oct. 19, 2010) .................................................................................................... 3

*Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869 (2d Cir. 1987) ...................... 5-8

*Chase Mortg. Company-West v. Bankers Trust Co.*, 2001 WL 547224 (S.D.N.Y. May 23, 2001) ............ 1-2

*Clark v. First Unum Life Ins.*, 2009 WL 1150318 (S.D.N.Y. Apr. 28, 2009) ................................ 7

*Cohen v. Metropolitan Life Ins. Co.*, 2007 U.S. Dist. LEXIS 86099 (S.D.N.Y. Nov. 21, 2007) ........ 8

*Cook v. N.Y. Times Co. Long-Term Disability Plan*, 2004 U.S. Dist. LEXIS 8306
(S.D.N.Y. Apr. 13, 2004) .................................................................................................. 2, 4

*Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149 (2010) .............................................. 2-6

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) ...................................................... 9

*L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n of Nassau Co., Inc.*,
2011 U.S. Dist. LEXIS 121881 (E.D.N.Y. Oct. 20, 2011) ................................................ 5

*Locher v. UNUM Life Ins. Co. of Am.*, 389 F.3d 288 (2d Cir. 2004) ........................................ 7

*MacLeod v. Proctor & Gamble Disability Benefit Plan*, 460 F. Supp.2d 340 (D. Conn. 2006) ........ 2

*McKay v. Reliance Standard Life Ins. Co.,* 654 F. Supp. 2d 731 (E.D. Tenn. 2009),
*aff'd,* 2011 U.S. App. LEXIS 13143 (6th Cir. 2011) ........................................................ 3

*Olds v. Retirement Plan of Int'l Paper Co.*, 2011 U.S. Dist. LEXIS 59329 (S.D. Ala. June 1, 2011) ........ 2

*Palmiotti v. Metropolitan Life Ins. Co.*, 2006 U.S. Dist. LEXIS 37490 (S.D.N.Y. June 6, 2006) ........ 2, 4

*Slupinski v. First Unum Life Ins. Co.*, 2006 WL 2266569 (S.D.N.Y. Aug. 7, 2006) .................... 7

*Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38 (2d Cir. 2009) ............................................ 8

*Spivak v. Sachs*, 16 N.Y. 2d 163 (1965) ...................................................................................... 9

*Spradley v. Owens-Illinois Hourly Employees Welfare Benefit Plan*, 2011 U.S. Dist. LEXIS 5924
(E.D. Okla. Jan. 21, 2011) .................................................................................................. 2

*Taaffe v. Life Ins. Co. of N. Am.*, 769 F. Supp. 2d 530 (S.D.N.Y. 2011) .................................... 5

*Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108 (2d Cir. 2011)(*per curiam*) ...................................... 5

*Winkler v. Metropolitan Life Ins. Co.*, 2006 U.S. Dist. LEXIS 70180 (S.D.N.Y. Sept. 28, 2006) .................. 2, 4

## FEDERAL STATUTES AND RULES

ERISA § 502(g)(1), 29 U.S.C. §1132(g)(1) ................................................................................ 1, 4-5, 10

FED. R. CIV. P. 54(d)(2)(B) ................................................................................................................ 1-2

## SECONDARY AUTHORITY

MOORE'S FEDERAL PRACTICE §541.51 (3rd ed. 2000) ...................................................................... 1

PRELIMINARY STATEMENT

Demonchaux's request under ERISA §502(g)(1) for an award of $96,070.50 in attorneys' fees and $1,284.30 in costs should be granted. Please note that Demonchaux has increased her request for attorney's fees from $88,042.50 to $96,070.50, to reflect $8,028.00 in legal fees incurred since May 15, 2013, in preparation of this reply brief.[1]  See Kantor Reply Aff., Ex. A; Riemer Reply Aff., Ex. B.

ARGUMENT

I.    ATTORNEYS' FEES SHOULD BE AWARDED TO DEMONCHAUX

   A.   PLAINTIFF'S MOTION FOR ATTORNEYS' FEES IS NEITHER PREMATURE NOR UNTIMELY

Plaintiff's motion is not premature. FED. R. CIV. P. 54(d)(2)(B)(i) provides that a motion for attorney's fees must "be filed no later than 14 days after entry of judgment." In other words, Rule 54(d)(2)(B)(i) sets the bar for the *latest* time the fee motion can be filed *if* a judgment is entered.[2]

There is no authority which indicates that a fee motion can *only* be filed if the Court signs a judgment. Oxford's reliance on *Chase Mortg. Company-West v. Bankers Trust Co.*, 2001 WL 547224 (S.D.N.Y. May 23, 2001), for the proposition that "a party *generally* cannot move for attorney's fees prior to judgment" is misplaced. (Oxford at 5)(emphasis added). *Chase Mortg. Company-West*, a non-ERISA case, is irrelevant to the instant action because it involves a motion to compel a party to submit to arbitration. Moreover, the *Chase Mortg. Company-West* Court relied solely on secondary authority (*i.e.*, MOORE'S FEDERAL PRACTICE §541.51 (3rd ed. 2000)), which itself is contrary to the

---

[1] $4,941.00 incurred on behalf of Kantor & Kantor and $3,087.00 incurred from Riemer & Associates. The requested fees have already been reduced by 10 percent to reflect any alleged duplication of work or inefficiency.

[2] Rule 54(d)(2)(B) further provides that it is only a final judgment that triggers the 14-day filing period set by Rule 54(d)(2)(B). It is important to note that Demonchaux does not contend that the 12/20/12 Memorandum and Order was a final judgment. Oxford provided no authority, and there is none that Demonchaux is aware, which would have put her on notice that the 12/20/12 Memorandum and Order should be construed as a final judgment.

1

unambiguous language of Rule 54. Indeed, *Chase Mortg. Company-West* has not been cited as authority with respect to this issue by any court within the Second Circuit. It is also contrary to the practice of the Courts within this Circuit which have (prior to the entry of judgment) awarded attorney's fees at the time of the summary judgment order and the remand to the administrator. *See, e.g., MacLeod v. Proctor & Gamble Disability Benefit Plan*, 460 F. Supp.2d 340, 349-51 (D. Conn. 2006) (granting plaintiff's motion for partial summary judgment, a remand to the Plan Trustees, and an award of attorney fees and costs).

Plaintiff's motion is not untimely. A motion for attorney's fees is not untimely because the deadline for filing such a motion is 14 days after the entry of judgment, and a judgment was never entered in this action. The reason for plaintiff's delay in filing this motion, which is nonetheless timely under Rule 54, was because plaintiff engaged in a good faith effort with defendant in drafting a proposed judgment.

      B.    DEMONCHAUX ACHIEVED "SOME SUCCESS ON THE MERITS" BECAUSE THIS COURT REMANDED HER CLAIM TO OXFORD

Oxford incorrectly argues that Demonchaux did not achieve "some success on the merits" by attempting to distinguish *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 130 S.Ct. 2149 (2010), from the instant case. In doing so, Oxford loses sight of the ultimate result in *Hardt*—a remand to re-review plaintiff's claim. Indeed, it is well-established in this Circuit for courts to award attorney's fees in matters involving a remand. *See, e.g., Cook v. N.Y. Times Co. Group,* 2004 U.S. Dist. LEXIS 8306, *5-6 (S.D.N.Y. Apr. 13, 2004)(Lynch, J.); *Winkler v. Metro. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 70180, *12-13 (S.D.N.Y. Sept. 28, 2006); *Palmiotti v. Metro. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 37490, *2 (S.D.N.Y. June 6, 2006).[3]

---

[3] Oxford asserts these cases are inapposite because they were decided *pre-Hardt*. Courts since *Hardt*, however, have held that a remand order without more satisfies the "some success on the merits" standard. *See Olds v. Retirement Plan of Int'l Paper Co.*, 2011 U.S. Dist. LEXIS 59329, *5 (S.D. Ala. June 1, 2011); *Spradley v. Owens-Illinois Hourly Employees Welfare Benefit Plan*, 2011 U.S. Dist. LEXIS 5924, *3

<u>First</u>, Oxford argues that Demonchaux "only successfully opposed Oxford's motion for summary judgment, which does not constitute 'success on the merits.'" (Oxford at 7).  Oxford's argument disregards the Court's thirty-two page opinion, which concludes, among other matters, that: (1) Oxford's Motion for Summary Judgment is DENIED; (2) Oxford's determination (denial on appeal) is VACATED; and (3) the case is REMANDED for reconsideration.  (12/20/12 Memorandum and Order (Doc. 44), p. 32).

The Court's 12/20/12 Memorandum and Order denied Oxford's motion and further determined that:

> <u>Defendant repeatedly engaged in unreasonable conduct</u>.  <u>The Administrative Record shows that Defendant found the exact same body of evidence to be sufficient to certify Plaintiff's continued inpatient care on August 7, 2009, and insufficient 3 days later.</u> (citations omitted). <u>Equally unreasonable, Defendant upheld its denial</u> after the Center (MNVRTC) provided new information on August 13 suggesting that on August 10 Defendant (sic) was, at best, the same as, and more likely, medically worse than Defendant had believed her to be when it certified her for inpatient treatment on August 7.

(Id. at 16)(emphasis added).  The Court continued by stating:

> <u>The evidence strongly suggests that Plaintiff's medical condition had deteriorated between August 7 and August 10;</u> even putting the most positive spin on the cutting incident and Plaintiff's weight loss, no reasonable person could find that Plaintiff's medical condition had improved between those dates.
>
> <u>Nor does the remainder of the Administrative Record provide a reasonable basis for Defendant to have found inpatient treatment to be 'Medically Necessary' as of August 7 but not 'Medically Necessary' as of August 10</u>…..One final piece of information further suggests that Defendant's own conflict of interest actually affected its decision to deny Plaintiff's claim: <u>Defendant ignored its own policy when it denied Plaintiff the opportunity for reconsideration</u> of the adverse determination.

(Id. at 18)(emphasis added)(citations omitted).  The Court concludes by finding:

---

(E.D. Okla. Jan. 21, 2011); *Bowers v. Hartford Life & Accident Ins. Co.*, 2010 U.S. Dist. LEXIS 114663, *6 (S.D. Ohio Oct. 19, 2010); *McKay v. Reliance Standard Life Ins. Co.*, 654 F. Supp. 2d 731, 736 (E.D. Tenn. 2009), *aff'd,* 2011 U.S. App. LEXIS 13143 (6th Cir. 2011).

3

> Giving appropriate deference to Defendant's decision here (denial of the appeal), the Court finds that the decision was without reason and unsupported by substantial evidence, and <u>was therefore arbitrary and capricious</u>.

(Id. at 27)(emphasis added).

In sum, the Court's finding that Oxford's opinion was without reason, unsupported by the evidence, was arbitrary and capricious, and thereby requiring a remand, was the equivalent of "some success on the merits" as the Supreme Court relied upon in *Hardt*.

<u>Second</u>, Oxford erroneously asserts that by the instant remand, Demonchaux has not obtained "any of the relief sought in her Complaint." (Oxford at 7-8). In doing so, Oxford creates an additional "requirement"—that a claimant must request the relief sought in order to achieve "some success on the merits." Not only does Oxford fail to provide any authority in support of this proposition, but this additional "requirement" has never been mandated by this Circuit. *See, e.g. Cook,* 2004 U.S. Dist. LEXIS 8306; *Winkler,* 2006 U.S. Dist. LEXIS 70180; *Palmiotti*, 2006 U.S. Dist. LEXIS 37490.[4]

Moreover, Demonchaux's complaint requests, among other relief:

1. Payment of health insurance benefits to the Plaintiff under Plaintiff's medical coverage under the Plan;
2. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;
3. Payment of prejudgment and postjudgment interest as allowed for under ERISA; and
4. For such other and further relief as the Court deems just and proper.

(Complaint at 5).

Certainly, and for arguments sake, the Complaint leaves the door open for any form of relief, which relates to the payment of her benefits or any other relief deemed appropriate by the Court.

---

[4] The undersigned counsel, Scott Riemer, represented the plaintiffs in *Cook*, *Winkler*, *and Palmiotti*. The court in each of these cases remanded plaintiff's claim to the insurer, even though the undersigned counsel did not "specifically request" a remand.

    C. EVEN IF *ARGUENDO*, THE *CHAMBLESS* FACTORS APPLY, ALL OF THE *CHAMBLESS* FACTORS FAVOR DEMONCHAUX

  Oxford asserts that in order to be awarded fees, a plaintiff must establish: (1) "some degree of success on the merits," as described in *Hardt*; and (2) the five *Chambless* factors.[5] (Oxford at 9-10). But, a plaintiff could be awarded attorney fees under *Hardt* with only a showing of "some degree of success on the merits" without regard to the five factors in *Chambless*. *See, e.g., Taaffe v. Life Ins. Co. of Am.,* 769 F. Supp. 2d 530, 542 (S.D.N.Y. 2011)(Maas, J.)(determining that the five *Chambless* factors did not need to be addressed after finding that plaintiff achieved "some success on the merits."). Indeed, the Supreme Court in *Hardt* did not see how the five factors were consistent with the statutory mandate and specifically made the five factors merely discretionary. 130 S.Ct. at 2158. The Second Circuit specifically rejected the application of the *Chambless* factors as a requirement:

> A court may apply—but is not required to apply—the *Chambless* factors in channeling [its] discretion when awarding fees under § 1132(g)(1). So long as a party has achieved some degree of success on the merits a court in its discretion may allow a reasonable attorney's fee and costs of action to either party. But it is not required to award fees simply because this pre-condition has been met.

*Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 110 (2d Cir. 2011)(*per curiam*)(citations omitted). *See also, L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n of Nassau Co., Inc.,* 2011 U.S. Dist. LEXIS 121881, *48-49 (E.D.N.Y. Oct. 20, 2011)(*Hardt* "undoubtedly lowered the rules for fee awards under ERISA, and, with reasonable certainty, reduced the effect of the so-called five-factor test" as "merely discretionary and secondary to the [Supreme] Court's new test.").

---

[5] The five *Chambless* factors are: (1) the degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy an award of attorney's fees; (3) whether an award of attorney's fees would deter other persons from acting similarly under like circumstances; (4) the relative merits of the parties' positions; and (5) whether the action conferred a common benefit on a group of plan participants. *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 872 (2d Cir. 1987).

5

Oxford has failed to explain why this case in particular requires the application of the voluntary *Chambless* factors. By contrast, there are strong reasons why the *Chambless* factors are unnecessary.

Nonetheless, even if, *arguendo,* the *Chambless* factors remain relevant despite the Supreme Court's ruling in *Hardt*, fees should be granted to Demonchaux because all the factors favor her.

### 1. Oxford Engaged in Culpable Conduct

Oxford attempts to heighten the first *Chambless* factor by requiring a finding that "Oxford was Culpable <u>And</u> its Conduct was Undertaken in Bad Faith." (Oxford at 10)(emphasis added). This is incorrect. The first *Chambless* factor explicitly provides: "1. The degree of the offending party's culpability *or* bad faith." 815 F.2d at 872. Regardless of Oxford's version of the first factor, there is no question that its conduct was culpable because this Court held that, among other matters:

- Oxford's initial and appeal denials were arbitrary and capricious. (12/20/12 Memorandum and Order, pp. 23, 27 ).

- Oxford's conflict of interest actually affected its decision to deny Plaintiff's claim: Defendant ignored its own policy when it denied Plaintiff the opportunity for reconsideration of the adverse determination. (Id. at 19).

- Oxford's reason to uphold its denial on appeal was without reason or substantial evidence. (Id. at 26).

Oxford attempts to water down its culpability by offering the unsupported proposition that, "…this Court found that Oxford made a mistake by not fully explaining the reasons for its determination." (Oxford at 10). Nowhere in the Court's opinion did it attribute Oxford's arbitrary, capricious, unreasonable and unsupported opinion to a simple "mistake." The remainder of Oxford's argument is an attempt to re-litigate its Motion for Summary Judgment.

### 2. Oxford has the Ability to Satisfy An Award of Attorneys' Fees

Oxford does not dispute its ability to satisfy Demonchaux's fee request.

6

        3.        An Award of Attorneys' Fees Would Deter Other Persons From
<br>                  <u>Acting Similarly Under Like Circumstances</u>

The 12/20/12 Memorandum and Order specifically provides that Oxford's conflict of interest "actually affected its decision to deny Plaintiff's claim" as it "ignored its own policy when it denied Plaintiff the opportunity for reconsideration of the adverse determination" and it upheld the denial "without reason or substantial evidence." (12/20/12 Memorandum and Order, pp. 19, 26). As a result, awarding Demonchaux fees will warn plan administrators to be more attentive to their statutory obligations to provide claimants with a full and fair review by ensuring that determinations are based on a thorough reading of the record, that they are in possession of all relevant evidence at the time the review is done, that claimants are timely notified of denials, and that claimants are provided the opportunity to exercise their rights under the plan once a denial is made.

        4.        <u>The Merits Favor Demonchaux</u>

Oxford attempts to re-litigate its Motion for Summary Judgment, as detailed *supra*. The fact that Demonchaux achieved "some success on the merits" by having her claim remanded to Oxford demonstrates that the merits favor her. (See Sections I(B) and C(1)).

        5.        <u>The Action Conferred a Common Benefit</u>

Oxford asserts that Demonchaux failed to demonstrate that the fifth factor weighs in her favor because she has not shown that "the award of benefits to her will confer any benefit to a group of participants." (Oxford at 16). This factor, however, is not dispositive of awarding a fee award. *See Clark v. First Unum Life Ins.*, 2009 WL 1150318 (S.D.N.Y. Apr. 28, 2009)(citing *Locher v. UNUM Life Ins. Co. of Am.*, 389 F. 3d 288, 299 (2d Cir. 2004)).

Oxford relies on *Slupinski v. First Unum Life Ins. Co.*, 2006 WL 2266569 (S.D.N.Y. Aug. 7, 2006), for the proposition that the fifth factor would weigh against an award of attorney's fees because plaintiff's claim would not directly benefit anyone. (Oxford at 16). But, the Second Circuit expressly held that absence of a common benefit to plan participants did not preclude an award of

7

attorney's fees, whereby Slupinski was ultimately awarded reasonable fees and costs. *See Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 47 (2d Cir. 2009).

Moreover, Oxford ignores the case law proffered by Demonchaux that supports otherwise. *See Cohen v. Metro. Life Ins. Co.*, 2007 U.S. Dist. LEXIS 86099, *8 (S.D.N.Y. Nov. 21, 2007)([A] determination finding fault with an insurer's conduct in an individual action confers a common benefit on a group of plan participants in that the insurer will be deterred from improperly denying benefits under similar circumstances.").

II.     THE COURT SHOULD AWARD $96,070.50 IN ATTORNEYS' FEES

   A.   THE HOURLY RATES REQUESTED REFLECT THE PREVAILING MARKET RATES

Demonchaux requested the following hourly rates: $600 for Scott M. Riemer and Lisa A. Kantor; $500 for senior associates Deborah A. Lieber and Elizabeth Green; $300 for junior associate Sharon H. Lee; $200 for senior paralegals Audrey Beerman, Ellen R. Mayer, and Kasandra A. Raux; and $175 for paralegal Denise Anderson.

Oxford attacks only the rate for senior associate Deborah A. Lieber. In doing so, Oxford arbitrarily asserts that Ms. Lieber's senior associate rate should be reduced by 40% to that of a junior associate rate because "she was not admitted in this district and not admitted *pro hac vice* in this action." (Oxford at 17-18). But, Ms. Lieber worked under the direction of and direct supervision of properly admitted counsel *pro hac vice*, Lisa S. Kantor.

Moreover, Oxford offers no authority to support its proposition that an associate attorney, working under a properly admitted attorney *pro hac vice*, in the *same* firm, cannot conduct research and prepare drafts of documents for review by the lead attorney. Oxford proffers *Bilazzo v. Portfolio Recovery Associates, LLC,* 876 F.Supp.2d 452 (D.N.J. 2012), a non-ERISA case involving the Fair Debt Collection Practices Act, where the out of state attorney worked independently and without supervision of local counsel. Indeed, the out of state lawyer's advertisement for local counsel stated

8

that local counsel would have "little or no involvement in the litigation." *Id.* at 462. Similarly, *Spivak v. Sachs*, 16 N.Y. 2d 163, 165 (1965), also a non-ERISA case involving a matrimonial matter, is distinguishable as the court found that the attorney had "practiced law illegally" and precluded him from recovering any fees because the out of state attorney held himself out as a New York State attorney.

Here, Ms. Lieber's work was completed under the direction and direct supervision of Ms. Kantor, an attorney properly admitted *pro hac vice*, at all times. Kantor Reply Aff., ¶ 2. Ms. Lieber was responsible for conducting research and preparing the initial drafts of the various pleadings at issue, but Ms. Lieber's work was always subject to approval from Ms. Kantor as demonstrated by the final product that went out under Ms. Kantor's signature. Id. at ¶ 2.

### B. THE NUMBER OF HOURS REQUESTED BY DEMONCHAUX IS REASONABLE

Oxford is quick to criticize the global hours spent on select tasks performed on the case. But, Oxford's general assertions lack the specificity required to overcome "a strong presumption that the lodestar figure represents a reasonable fee." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998). For example, Oxford criticizes the time Ms. Lieber utilized to prepare the Opposition to Oxford's Motion for Summary Judgment and instant application for fees. Oxford cannot satisfy its burden of overcoming the "strong presumption" that the lodestar figure represents a reasonable fee because Oxford failed to provide the Court with specific criticism of any particular time entry. Ironically, the Kantor firm was particularly sensitive to not bill for any of Ms. Kantor's time that could be construed as duplicative of the work Ms. Lieber had done, and so any time M. Kantor spent revising or editing drafts was not billed. Id. at ¶ 3. Additionally, because Ms. Kantor's billing rate is higher than Ms. Lieber's, wherever possible, Ms. Kantor was careful not to credit herself with any work that was done, at least in part, by an associate working under her supervision. Id. at ¶ 4.

Moreover, Oxford asserts that Demonchaux's fee request should be reduced by 15% and incorrectly attributes this percentage "to the overall amount that Demonchaux admits would be appropriate duplication of services." (Oxford at 18). This is incorrect. Demonchaux never admitted that there was a duplication of services rendered in her moving brief. Rather, Demonchaux proposed a voluntary 10% deduction, as opposed to 15%, to preemptively address any *allegations* of duplication or inefficiency.

III.     THE COURT SHOULD AWARD $1,284.30 IN COSTS

Oxford does not dispute the costs requested by Plaintiff.

CONCLUSION

For the reasons set forth above, Plaintiff requests attorneys' fees under ERISA §502(g)(1) in the amount of $96,070.50 and costs in the amount of $1,284.30.

Dated:  New York, New York
        June 21, 2013

                                                    RIEMER & ASSOCIATES LLC
                                                    60 East 42nd Street, Suite 1750
                                                    New York, New York 10165
                                                    (212) 297-0700
                                                    sriemer@riemerlawfirm.com

                                                    By: /s/Scott M. Riemer
                                                         Scott M. Riemer (SR 5005)

Dated:  Northridge, California
        June 21, 2013

                                                    KANTOR & KANTOR, LLP
                                                    19839 Nordhoff Street
                                                    Northridge, California 91324
                                                    (818) 886-2525
                                                    lkantor@kantorlaw.net

                                                    By: /s/Lisa S. Kantor
                                                         Lisa S. Kantor (SBN 110678)

10

CERTIFICATE OF SERVICE

  I certify that on June 21, 2013, I served a true and complete copy of the foregoing document by transmitting the same by electronic mail to the following individuals:

Michael H. Bernstein, Esq.
Sedgwick LLP
225 Liberty Street, 28th Floor
New York, NY 10281-1008
Michael.Bernstein@sedgwicklaw.com

I also certify that this document filed through the ECF system will be sent electronically to all registered participants on June 21, 2013.


Dated: New York, New York
   June 21, 2013


            /s/ Scott M. Riemer
            Scott M. Riemer (SR 5005)
            RIEMER & ASSOCIATES, LLC
            60 East 42nd Street, Suite 1750
            New York, New York 10165
            (212) 297-0700
            sriemer@riemerlawfirm.com